345 P.2d 776

Alexander L. ABBOTT and Sam R. Kaufman, Petitioners,

v.

SUPERIOR COURT OF PIMA COUNTY and Honorable Gordon Farley, Judge of the Superior Court of Pima County, Respondents.

No. 6894.

Supreme Court of Arizona.

Nov. 4, 1959.

Scruggs & Rucker, Tucson, for petitioner Alexander L. Abbott.

McCarty, Chandler, Tullar & Udall and Sidney Weissberger, Tucson, for petitioner Sam R. Kaufman.

Wade Church, Atty. Gen., Harry Ackerman, County Atty. of Pima County, by John Claborne, Deputy County Atty., H. Earle Rogge, Jr., Sp. Deputy County Atty., Tucson, for respondents.

PHELPS, Chief Justice.

This is an original proceeding initiated in this court by petitioners, Alexander L. Abbott and Sam R. Kaufman, seeking to prevent respondent, the Honorable Gordon Farley, a nonresident judge presiding in the Pima County Superior Court, from taking any further action in criminal cause No. 11671, which involves a bribery indictment,

containing several counts against petitioners.

An informal hearing was held in accordance with the provisions of Rule 1, Rules of the Supreme Court, 17 AR.S. following which we issued an alternative writ of prohibition in order to resolve the question as to whether, under the admitted facts, the respondent court had jurisdiction to arraign and then proceed with the trial of petitioners. Prior to the filing of this petition the petitioners (as defendants) had moved, on various jurisdictional grounds, to quash the indictment theretofore returned against them by a Pima County Grand Jury. The motion to quash was denied, and such order is not appealable. Hence it appeared to us that under the peculiar facts of this case prohibition was a proper remedy to test jurisdiction of the Court, for as was stated by the Supreme Court of California in a prohibition proceeding, entitled Bruner v. Superior Court, 92 Cal. 239, 28 P. 341, 345:

> "The only other question is: Would petitioner have a plain, speedy, and adequate remedy in the ordinary course of law? If there be such remedy, it must be by appeal. But it would be a difficult proposition to maintain that a defendant in a criminal case, forced through all the stages of a trial for felony without any indictment against him, or, which is the same thing in effect, upon a void indictment, would have a plain, speedy, and adequate remedy, because, after conviction and judgment, and perhaps after suffering the ignominy of imprisonment in the state-prison, he could have the illegal proceeding reversed on appeal. * * *"

Various interesting questions of law were urged in the trial court as to why indictment should be quashed and they were reiterated here in the amended petition for writ of prohibition. As presented to us they were substantially:

1. That the indictments were not found endorsed and presented as prescribed by the Rules of Criminal Procedure, rules 108, 153, 17 A.R.S. In this connection it was claimed and shown that when jurors were absent from the grand jury sessions when testimony was being received and when such jurors returned, the foreman or other member of the grand jury, or the county attorney, summarized the testimony received during their absence.

2. That less than the required number of grand jurors heard the evidence and deliberated upon the evidence relating to these indictments (we interpret this to mean that there was less than a quorum present either when the evidence was received or when the jury voted on the question of a true bill).

3. It is claimed that the constitutional rights of the defendants have been violated in that the sessions of the grand jury were

illegally held because they were not held at the Pima County Courthouse but in the United States Post Office building in Tucson, a place under the exclusive jurisdiction of the United States and not a part of the "County seat" of Pima county.

These matters which are claimed to have violated the constitutional rights of the defendants present serious jurisdictional questions of law. Inasmuch, however, as it is most improbable that any future state grand jury session will, as here, be again held on a federal "enclave" we believe it to be unnecessary for a resolution of the jurisdictional question raised in respect thereto. We shall therefore confine our discussion to the first points above mentioned, which will be determinative of the matter.

The facts are that the Superior Court of Pima County called a grand jury under the provisions of A.R.S. § 21–312. As a result of said call, 17 grand jurors were duly empaneled and, after the appointment of a foreman, were sworn and instructed as to their duties by the Honorable Lee Garrett, one of the judges of the Pima County Superior Court. The precise problem presented is that the jurors voting for the return of said indictment, according to the grand jury minutes, did not hear all of the evidence; that some were excused and were given a summary of the evidence received during their absence by the foreman or other member of the grand jury, or by the county attorney, i. e., their interpretation of the testimony received during such absence.

In the case of United States ex rel. McCann v. Thompson, 1944, 144 F.2d 604, 156 A.L.R. 240, authored by the distinguished Chief Judge Learned Hand of the Second Circuit Court of Appeals, it was held that the absence of a juror from the grand jury room when evidence was presented against a person then under investigation did not deprive him of the right to vote with other members of the jury for a true bill. The reason assigned for this conclusion is that almost invariably it is only the evidence of the accusers that is presented to a grand jury; that the person charged is not often called and therefore presents no defense. Therefore, if there is enough evidence to satisfy a juror who has been absent when portions of the evidence relative to a given charge was heard, no possible harm could be done to the accused. We do not have that situation here.

In the instant case the circumstances are radically different. The record shows that some of the jurors who voted for the return of a true bill were absent one and two days; one juror was absent 3 days, another 4 days, another 5 days, and another 6 days while the charges against the above-named petitioners were being investigated and the foreman, county attorney or some

other member of the jury undertook upon their return to summarize or interpret for them what the witnesses who testified during their absence had told the jury. Such a practice, although no doubt innocently conceived and executed in this case, would be most dangerous and could result in great injustice by incorrectly informing such jurors as to what was actually said by the witnesses. It is indubitably true that no two people who have heard the testimony of a witness for five minutes can repeat the substance of it alike. It is hearsay testimony of the rankest type and should never be permitted. This attempted summarization of the testimony heard during the absence of the witnesses vitiates any true bill returned in which such absent jurors participated. This applies equally to an accusation. This clearly differentiates the instant case from the McCann case, supra.

■ There is still another aspect of the matter which was raised as above mentioned and that was the question of a quorum being present at all times. A.R.S. § 21–101 provides that

"A grand jury shall be composed of not less than sixteen nor more than twenty-one persons."

and A.R.S. § 21–312 requires that the order for a grand jury " * * * shall not be more than twenty-one nor less than sixteen. * * *" Rule 105, Rules of Criminal Procedure, provides that it requires the concurrence of twelve jurors to return a true bill. The evidence is clear that except for the first few days of the session the full membership was never present. These defendants were not under investigation during that period. This question goes to the very heart of the validity of any indictments returned and it is therefore important that we discuss the question and determine what constitutes a quorum in a grand jury session.

The federal statutes provide that a grand jury shall consist of not less than sixteen nor more than twenty-three jurors and that twelve jurors are necessary to return a true bill. In the McCann case, supra, Judge Hand stated sixteen jurors constituted a quorum. It was claimed in that case that the presence of all twenty-three jurors was required when an indictment was presented to the court. He held this contention was unsound in view of the fact that sixteen members constituted a quorum. We agree with this conclusion, that sixteen jurors constitute a quorum, and we hold that this applies under the Arizona statute above quoted. We believe that the universal understanding of the meaning of a quorum is that it

" * * * is such a number of members of a body as is competent to transact business in the absence of the other

members." Morton v. Talmadge, 166 Ga. 620, 144 S.E. 111, 114. .

Applying the above rule to the actions of the grand jury in the instant case there appears to have been not a single session during the period these petitioners were being investigated when sixteen jurors were present. Juror Lembo was absent 32 days of the entire session and was absent every day during the period devoted to the investigation of defendants; Croom was absent 18 days during their investigation. At least 4 jurors were absent on 3 different days; 3 jurors were absent on 7 days, and 2 jurors were absent on 10 days of that period. Only 15 jurors were present when the vote on true bills and accusation was taken, one of whom did not vote because of absence during the last 23 sessions of the grand jury.

It is our considered opinion, and we so hold, that the absence of a quorum nullifies the indictments returned against respondents. The alternative writ of prohibition heretofore issued is made peremptory.

STRUCKMEYER, UDALL and BERNSTEIN, JJ., and R. C. STANFORD, Jr., Superior Court Judge, concur.

NOTE: J. MERCER JOHNSON, Justice, being disqualified, the Honorable R. C. STANFORD, Jr., Judge of the Superior Court, Maricopa County, was called in his stead and participated in the determination of this appeal.