**UNITED STATES of America**

v.

**Peter J. CAMIEL et al.**

**Crim. No. 80–161.**

United States District Court,
E. D. Pennsylvania.

Sept. 19, 1980.

Jack Meyerson, Asst. U. S. Atty., E. D. Pa., Philadelphia, Pa., for plaintiff.

Howard Gittis, Philadelphia, Pa., for Camiel.

John P. Joyce, Pittsburgh, Pa., for Nolan.

Ronald Kidd, Philadelphia, Pa., for Fumo.

John R. Carroll, Philadelphia, Pa., for Scarcelli.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Defendants have filed three separate motions to dismiss and supporting memoranda.[1] As the following discussion will establish, I have rejected all arguments advanced in support of dismissal and therefore will deny all of these motions.

The indictment charges these defendants with a total of forty–four counts of mail fraud. It is the government's claim that the defendants, using their political influence and/or official position, fraudulently expended the funds of the Commonwealth of Pennsylvania to reward certain members of the Democratic Party, the so-called "party faithful." Allegedly, defendants Peter Camiel and Vincent Fumo, as Chairman and Executive Assistant to the Chairman of the Democratic County Executive Committee of Philadelphia ("City Committee"), engaged in a fraudulent scheme together with defendant Thomas Nolan, then Pennsylvania Senate Majority Leader, and defendant Vincent Scarcelli, then Chief Clerk of the Pennsylvania House, in which they made members of the Democratic "party faithful" employees of the Pennsylvania General Assembly and paid them, either from the Senate Special Leadership Account or from the House Per Diem Account, even though they never did any work for the General Assembly. The government contends that the defendants were using the funds of both the Senate and House accounts to compensate these so-called "no-show employees" for partisan political activities performed on behalf of the Democratic Party and its candidates for public office. The scheme supposedly violated the mail fraud statute, 18 U.S.C. §§ 1341 and 2, because the defendants caused paychecks and invoices or vouchers, which were to be returned by the payee, to be mailed to the "no-show" employees.

### THE FUMO MOTION TO DISMISS

In an earlier order issued in this case, I granted defendants' discovery request that the government provide them with the attendance records of the grand jurors who voted on whether to return the present indictment. Those records revealed that of the twenty-one grand jurors attending the May 20, 1980 session at which the indictment was returned, only eight had attended all of the prior thirty-five sessions during which evidence on this case was presented. Citing the decisions in *United States v. Leverage Funding Systems*, 478 F.Supp. 799 (C.D.Cal.1979) and *United States v. Roberts*, 481 F.Supp. 1385 (D.C. Cal.1980), defendant Fumo argues that the Fifth Amendment and Federal Rule of Criminal Procedure 6(f)[2] require that at least twelve of the jurors voting to return

---

1. Counsel for defendant Fumo filed one motion and a supporting memorandum. Counsel for Messrs. Camiel and Scarcelli each filed a separate motion and supporting memorandum which was joined in by the other. Also, Mr. Fumo joined in the motion and memorandum filed by defendant Scarcelli's attorney. Finally, Mr. Nolan joined in the motions filed by all the other defendants.

2. Federal Rule of Criminal Procedure 6(f) states:

An indictment may be found only upon the concurrence of 12 or more jurors. The indictment shall be returned by the grand jury to a federal magistrate in open court. If a complaint or information is pending against the defendant and 12 jurors do not concur in finding an indictment, the foreman shall so report to a federal magistrate in writing forthwith.

an indictment must have attended all sessions at which the grand jury heard evidence on the proposed indictment. In the *Leverage Funding* case, Judge Pregerson stated a *per se* rule: a federal indictment is valid only if it were returned by at least twelve "informed" grand jurors, that is, twelve jurors who have attended all sessions during which evidence had been presented on a particular case. 478 F.Supp. at 804. In *U. S. v. Roberts*, Judge Hauk adopted the rule stated in *Leverage Funding* and dismissed an indictment because, *inter alia*, it was not returned by twelve jurors who had attended all sessions at which the grand jury heard evidence on the case.

Although I share the view that the Fifth Amendment and the historical role of the grand jury in Anglo–American law require that an indictment be returned only by "informed" grand jurors, I do not believe that a juror must attend all grand jury sessions in order to be informed. There are certainly cases where cumulative evidence is presented to a grand jury during the course of several sessions. Moreover, since Fed.R.Crim.P. 6(e) now requires that all grand jury proceedings involving the presentation of evidence be recorded stenographically or by an electronic device, a juror who has been absent may keep abreast of the evidence by reviewing the transcripts or tapes of the missed sessions.

As the record now stands in the present case, I have no reason to believe that the indictment was not returned by at least twelve informed jurors. However, as I stated during the hearing on this motion, should those portions of the grand jury transcripts disclosed to the defense pursuant to my order of July 25, 1980 reveal that some of the grand jurors who voted to return this indictment missed sessions during which significant evidence, particularly evidence which might exculpate the defendants, was presented, I would reconsider defendant Fumo's motion to dismiss.

## THE CAMIEL MOTION TO DISMISS

■ In effect, defendant Camiel bases his motion to dismiss on one theory, buttressed by one United States Supreme Court decision.[3] It is his contention that because the Pennsylvania statutes creating the Senate Special Leadership Account and the House Per Diem Account invest broad discretion in the Senate Majority Leader and the Chief of the House to define the duties of the employees on these payrolls, this prosecution by the United States Department of Justice constitutes an impermissible intrusion into the employment practices of a State and is forbidden by the Tenth Amendment.[4] Also, defendant Camiel argues that this prosecution represents a misapplication and an overextension of the mail fraud statute because such federal interference in the "employment prerogatives" of a State is not justified by the postal powers.

Defendant Camiel relies on the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) as the legal authority for his argument that the Tenth Amendment prohibits this prosecution. Defendant cites *National League of Cities* for the broad proposition that Congress, and by extension any other branch of the federal government, may not act in a manner which would significantly alter or displace a state's ability to structure its employer/employee relationships.

After considering the arguments offered by defendant Camiel and reviewing the *National League of Cities* opinion, I conclude that the case is not controlling as to the matter now before me. *National League of*

---

**3.** As I noted previously, Camiel and Scarcelli have filed jointly two separate motions to dismiss with supporting memoranda. I am referring to the motion and memorandum authored by Mr. Camiel's attorney as the Camiel Motion to Dismiss. Similarly, the Scarcelli Motion to Dismiss is the one written by Mr. Scarcelli's counsel.

**4.** The Tenth Amendment states:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

*Cities* involved a challenge by a number of states, cities, municipal and state organizations to the 1974 amendments to the Fair Labor Standards Act. These amendments extended the coverage of the Act's minimum wage and maximum hour provisions to almost all state and municipal employees. In an opinion written by Justice Rehnquist, the Supreme Court found that although the regulations came within the scope of the Commerce Clause, the Tenth Amendment does not permit their application to the employees of state and local governments because such application would "displace the States' freedom to structure integral operations in areas of traditional government functions." 426 U.S. at 852, 96 S.Ct. at 2474. The holding of the *National League of Cities* is a limited one; certainly, it does not stand for the proposition that under no circumstances can the federal government interfere in the employer/employee relations of a state or local government. It is the view of Constitutional scholar Laurence Tribe that the Court's underlying concern in the *National League of Cities* case was that a federal regulation such as the minimum wage/maximum hour law should not be allowed to overburden financially local government and thereby interfere with its ability to deliver such basic services as police and fire protection.[5] Indeed, a substantial portion of the opinion is devoted to describing how the requirement that state and local employees be paid the federal minimum wage and overtime would force state and local governments to cut or suspend important programs.

In the instant case, the prosecution of the defendants for alleged violations of the federal mail fraud statute does not threaten to strain the finances of the Commonwealth and its ability to provide its citizens with basic services. In addition, my conclusion that the *National League of Cities* decision is not relevant to this case is supported by a statement appearing in a Third Circuit opinion. In the case of *In Re Grand Jury Proceedings* (Appeal of Henry J. Cianfrani), Judge Weis stated that the principles set forth in the *National League of Cities* case would not apply to a mail fraud case. 563 F.2d 577, 582.

### THE SCARCELLI MOTION TO DISMISS

Defendant Scarcelli makes several arguments in support of his motion to dismiss. First, he reiterates the Tenth Amendment argument, stating that by this prosecution the United States Department of Justice has improperly "taken on as an adversary" the Pennsylvania patronage system. Mr. Scarcelli contends that both the statute regulating the payment of the General Assembly's per diem employees, Act 417, 46 P.S. § 42.41(d), and a 1977 opinion interpreting Act 417 issued by the Chief Legal Counsel of the Pennsylvania House are "susceptible of being reasonably interpreted so as to require payment of an employee whether or not the employee works." My reading of the statute and of the opinion of the Chief Legal Counsel is markedly different than that of defendant Scarcelli. I believe that there is language found in both the Act and the opinion clearly showing a presumption and expectation that per diem employees do some work for the General Assembly. The government asserts that it will produce evidence at trial showing that the General Assembly employees named in the indictment did no work at all for that body. Consequently, at this stage of the proceedings, it would not be proper to dismiss the indictment on the basis that it constitutes an impermissible interference with the "legislative judgment" of the Pennsylvania General Assembly as expressed in Act 417. In addition, the Fourth Circuit recently has addressed and rejected a similar claim that the mail fraud statute should not be used to attack allegedly corrupt practices of state politicians and public officials. In *United States v. Mandel*,[6] the Court of Appeals stated:

---

5. Tribe, Unraveling National League of Cities: The New Federalism and Affirmative Reports to Essential Government Services, 90 Harv.L. Rev. 1065 (1977).

6. 591 F.2d 1347 (4th Cir.), *rev'd on other grounds*, 602 F.2d 653 (4th Cir. 1979) (en banc), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

... it is clear that the regulation of the mail fraud statute is on the misuse of the mails, control of which lies with Congress, and not on the substance of the scheme to defraud. Even if the substance of the scheme to defraud involves matters normally within the purview of state control or regulation, once the mails are utilized to effectuate the scheme, the federal government has the right to prosecute the schemer under the mail fraud statute. 591 F.2d at 1358.

■ Defendant Scarcelli also argues that a charge of mere nondisclosure or concealment cannot form the basis for a mail fraud prosecution. In this case the indictment alleges that as *part* of the scheme to defraud, the defendants knowingly and wilfully concealed from the Pennsylvania General Assembly, the Commonwealth and its citizens the fact that certain persons were employed and paid by the General Assembly but did no work. (Count One, ¶ 17). Therefore, since concealment and nondisclosure are not the only acts alleged to have been taken by defendants in carrying out the supposed scheme to defraud, defendant's argument on this point is without merit.

As a third ground for dismissal of the indictment, defendant Scarcelli argues that the mailings which form the basis of this case cannot, as a matter of law, support a mail fraud prosecution because they are routine mailings which are themselves intrinsically innocent. To support this contention defendant relies on the Third Circuit's opinion in *United States v. Tarnopol*, 561 F.2d 466 (3d Cir. 1977) and on the Supreme Court decisions cited therein, *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) and *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). It is the defendant's view that these cases stand for the principle that any "routine business mailing," such as the mailing of the paychecks and salary vouchers involved in this case, cannot be the subject of a mail fraud charge. I do not accept this interpretation of the *Tarnopol* holding.

In a more recent opinion, *United States v. Brown*, 583 F.2d 659 (3d Cir. 1978), the Court of Appeals has clarified its holding in *Tarnopol*. In the *Brown* decision, the Third Circuit first observed that *Tarnopol* did not establish any *per se* rule regarding routine business mailings but simply reiterated the established view that mailings which are too remote from a fraudulent scheme will not support a mail fraud charge. 583 F.2d at 667. The Court of Appeals further noted in *Brown* that:

... if the mailing is a part of executing the fraud, or is closely related to the scheme, a mail fraud charge will lie even though the mailing was also related to a business purpose.

583 F.2d at 668.

■ I would not characterize the mailings of the paychecks and vouchers as being remote from the alleged fraudulent scheme, i. e., the payment of salaries to employees who have never done any work. Nevertheless, *United States v. Brown, supra*, states that the relation of the mailing to the fraud is a question of fact; hence, it is a matter to be determined by the jury.

■ Defendant Scarcelli has also raised the claim that this prosecution is barred by the First Amendment because it "implicates the defendants' protected political activities." However, since he has not explained nor am I now able to see how the activities described in the indictment qualify as protected political activities, at this time I must reject Mr. Scarcelli's First Amendment argument.

For the foregoing reasons, I deny the motions to dismiss filed by the defendants. The attached order is entered.