STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT DEL FINO, DEFENDANT-RESPONDENT.

Argued April 23, 1985—Decided July 16, 1985.

*Harold J. Ruvoldt, Jr.,* Hudson County Prosecutor, argued the cause for appellant (*Harold J. Ruvoldt,* attorney; *Anthony Pepe,* Assistant Prosecutor, on the brief).

*Seymour Margulies,* Jersey City, argued the cause for respondent (*Margulies, Margulies & Wind,* Jersey City, attorneys).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The central question in this appeal is whether one of two indicted co-conspirators may, after a separate trial and conviction, raise a challenge to the indictment that the co-conspirator timely raised before his trial. We hold that the circumstances of this case do not demonstrate the good cause required by Rule 3:10–2 to mount such an untimely challenge, nor do they reveal any fundamental miscarriage of justice that would invoke our supervisory power to correct a perceived injustice.

The case is made complex by its convoluted procedural history. In November 1981, Robert Del Fino and Thomas Fricchione were indicted by a Hudson County grand jury, which charged both with conspiracy to commit theft by extortion, contrary to *N.J.S.A.* 2C:5–2 (Count One), and attempted theft by extortion, contrary to *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:20–5 d. (Count Two). The indictment charged that the two had agreed or would agree for a price to use their influence to gain favorable job preference for another in the Jersey City school system.

On March 29, 1982, at a pretrial hearing attended by the attorneys for both parties, the court severed the two cases because of *Bruton* problems concerning the use of Fricchione's statement in a common trial.[1] After disposing of the severance issue, the trial court asked, "are there any motions open?". Fricchione's attorney replied:

> The only one I have is this order, which I'm going to serve the Clerk of the Grand Jury, and I don't know that it will develop anything, but if it will, it will be a limited motion.

The court replied that it would reserve on that aspect, and set trial dates for each defendant on May 3 and May 17, 1982, for Del Fino and Fricchione respectively.

---

[1]Under *Bruton v. United States,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968), and *State v. Young,* 46 *N.J.* 152 (1965), absent the right to cross-examine, admission of the statement of a co-defendant at a joint trial that implicates defendant constitutes prejudicial error. *See R.* 3:15–2.

Del Fino went to trial in May 1982 and was convicted of agreeing to conspire to commit theft by extortion but was acquitted of the offense of attempted theft by extortion. In June 1982, he received a three-year custodial sentence and a fine of $10,000.

Following conviction and filing of notice of appeal, Del Fino moved before the trial court to dismiss the indictment on the ground that the records of the grand jury did not disclose that twelve or more of the grand jurors who voted for the indictment were present at all sessions to hear the entire presentation of evidence. Because jurisdiction was with the Appellate Division, the trial court denied the motion pursuant to Rule 2:9–1. On September 22, 1982, the Appellate Division refused to allow a partial remand so that the trial court could review the grand jury proceedings.

Thereafter, on September 27, 1982, the Hudson County assignment judge entertained Fricchione's motion to dismiss the indictment against him. Following a hearing and a re-polling of certain grand jurors, only nine jurors stated that they voted to indict Fricchione on Count Two (attempted theft by extortion). Three stated that they could not recall. On the First Count, thirteen said that they voted to indict but fewer than twelve of these had attended all sessions of the grand jury. The court made no inquiry as to the voting in regard to Del Fino. The indictment against Fricchione was dismissed on November 22, 1982.[2] Thereafter, Del Fino twice renewed his motion before the trial court to dismiss the indictment. Both motions were denied on jurisdictional grounds. He appealed the final denial to the Appellate Division. That court heard the motion along with the substantive appeal. On November 4, 1983, the Appellate Division entered an order of partial remand to the trial court to entertain the motion to dismiss the indictment. The

[2]Fricchione was subsequently indicted for the same offenses. Del Fino was named as an unindicted co-conspirator.

remand required the trial court to hear and decide the motion by December 15, 1983. The time was extended to February 15, 1984.

On February 15, 1984, the trial court denied the motion to dismiss but indicated, however, that it would give defendant an evidentiary hearing at which time defendant would be afforded an opportunity to establish "good cause" for relief pursuant to Rule 3:10-2. The trial court further ruled that it would recall and question the grand jurors with respect to their votes concerning defendant. In a letter directed to the Appellate Division on the same date, the court requested a second extension (to April 16, 1984), to conduct the evidentiary hearing and re-polling of the jurors. The Appellate Division denied the trial court's request and directed both parties to supplement the record with the events that had occurred since the remand had commenced.

The Appellate Division concluded that since the grand jury proceedings concerning Del Fino were, for all that appears, identical with Fricchione's, and that since Fricchione's indictment was dismissed, "fundamental fairness requires that the result be the same as to each." We granted the State's petition to review the Appellate Division judgment dismissing the indictment against Del Fino. 99 *N.J.* 150 (1984).

I.

■ Defendant argues that since the grand jury alleged only one conspiracy involving Fricchione and Del Fino, it is conceptually impossible that a single indictment adjudged defective as to one can withstand attack by the other. The premise of the argument is the common-law rule that if one of two co-conspirators is acquitted, it is impossible that the other be guilty of conspiracy.

We need not resolve the substantive merits of this contention for purposes of determining the issue posed in this appeal, that is, whether Del Fino has demonstrated the necessary good

cause for relief under Rule 3:10–2. We note, however, that the Code departs from the traditional notion of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of "two or more persons" agreeing or combining to commit a crime. *N.J.S.A.* 2C:5–2 a. ("A person is guilty of conspiracy with another person * * * if * * * he * * * [a]grees with such other person * * * that they or one or more of them will engage in [criminal] conduct.") Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct that suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part—an approach that the Drafters of the Code designate as "unilateral."

> One consequence of this approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none.
>
> [II *New Jersey Criminal Law Revision Commission: Commentary* p. 131 (1971).]

Consequently, it is by no means clear that the Appellate Division was correct in concluding that, as a matter of policy, "fundamental fairness" itself dictates that each of the charged conspirators must receive identical treatment. Regardless of the possible merit in his position, Del Fino did not raise the grand jury challenge before trial. Rule 3:10–2 specifically mandates that all defenses and objections based on defects in the institution of the proceedings or in the indictment must be raised before trial. Except for good cause shown, failure to present any such defense constitutes a waiver. *See R.* 3:10–2. The failure of timely assertion, even of constitutional rights, may result in such a waiver. *State v. McKnight,* 52 *N.J.* 35, 48 (1968). What constitutes good cause for delay will depend upon the circumstances. Even in the shortened time required by Rule 3:5–7(a), which mandates that any challenge to

the validity of a search be made within 30 days of the plea, courts have not found good cause simply because a co-defendant was allowed to raise a timely procedural challenge. *State v. Boyd*, 165 *N.J.Super.* 304 (App.Div.1979), certif. den., 85 *N.J.* 128 (1980). *But see State v. Price*, 108 *N.J.Super.* 272 (Law Div.1970) (public defender's administrative problems warrant extension of 30-day bar to search challenge in view of circumstances). Moreover, the merits of the underlying assertion must be persuasive if an untimely challenge is to be otherwise allowed for good cause. *See Reed v. Ross*, — *U.S.* —, 104 *S.Ct.* 2901, 82 *L.Ed.*2d 1 (1984) (presence of novel legal issue contributes to finding of good cause for failure to raise issue in state court proceedings); *State v. Allaband*, 134 *N.J.Super.* 353 (App.Div.1974) (motion to suppress evidence after eleven-month delay without more will not justify good cause to accept belated challenge); *State v. Hughes*, 128 *N.J.Super.* 363 (App.Div.), certif. den., 66 *N.J.* 307 (1974) (failure to show invidious discrimination against blacks in the grand jury indicting defendant part of lack of good cause to raise an untimely challenge to composition of grand jury).

█ Defendant argues that there was no way trial counsel could have known of the defects in the grand jury proceedings prior to trial, that this would clearly establish good cause, and that if in fact there was grand jury misconduct as to this defendant, good cause is established based on principles of fundamental fairness and a violation of the New Jersey Constitution. *See N.J. Const.* (1947) art. I, para. 8 ("No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury * * *."). We are satisfied that there was no grand jury misconduct rising to a level that would imperil notions of fundamental fairness. See Part II, *infra* at 162. There was, however, administrative error by the clerk of the grand jury that this defendant could have addressed prior to trial as his co-defendant did. Del Fino's trial counsel was present in court when Fricchione's attorney stated that he was making further inquiry into the grand jury records.

We are informed that Fricchione received the jury tally and attendance slips in March 1982. In light of all the circumstances, we are satisfied that good cause has not been established to permit now a challenge to the indictment.

## II.

In the disposition we make, we are not required to address the merits of defendant's challenge to the indictment. The issues raised by such a challenge have not evoked a uniform response. Federal courts have declined to adopt a "bright line" rule invalidating the vote of any grand juror who had not attended every session of the grand jury.

Since the Federal Rules of Criminal Procedure require that a grand jury consist of sixteen to twenty-three persons, it has been held that an indictment is valid if (1) the grand jury returning the indictment consisted of between sixteen and twenty-three, (2) every grand jury session was attended by at least sixteen jurors, and (3) at least twelve jurors voted to indict. *Fed.R.Crim.P.* 6. "Nothing requires that every juror voting to indict attend every session." *United States v. Leverage Funding Systems, Inc.*, 637 *F.*2d 645, 649 (9th Cir.1980), *cert.* den., 452 *U.S.* 961, 101 *S.Ct.* 3110, 69 *L.Ed.*2d 972 (1981).

That ruling has generally been followed in the federal courts. *See, e.g., United States v. Al Mudarris*, 695 *F.*2d 1182 (9th Cir.), *cert.* den., 461 *U.S.* 932, 103 *S.Ct.* 2097, 77 *L.Ed.*2d 305 (1983); *United States v. Cronic*, 675 *F.*2d 1126 (10th Cir.1982), rev'd on other grounds, 466 *U.S.* 648, 104 *S.Ct.* 2039, 80 *L.Ed.* 2d 657 (1984); *United States v. Raineri*, 521 *F.Supp.* 30 (W.D.Wis.1980); *United States v. Camiel*, 503 *F.Supp.* 769 (E.D.Pa.1980). The premise of these decisions is that a court is entitled to presume generally that grand jurors have properly discharged their responsibility, and to presume specifically that a grand juror would not vote in favor of indictment unless the juror had heard sufficient evidence to justify the charge.

What the rule seeks to avoid is a detailed inquiry into the sufficiency of the evidence before the grand jury. It also seeks

to avoid a trial within a trial on whether a juror was present on the specific dates when exculpatory evidence was presented to the grand jury as a whole. *See United States v. Camiel, supra,* 503 *F.Supp.* 769.

State courts have taken differing views on the question. *See, e.g., People v. Fujita,* 43 *Cal.App.*3d 454, 476–77, 117 *Cal.Rptr.* 757, 771 (1974), *cert.* den., 421 *U.S.* 964, 95 *S.Ct.* 1952, 44 *L.Ed.* 2d 451 (1975) (twelve jurors voting to indict must have heard the substance of all the evidence); *Abbott v. Superior Court of Pima County,* 86 *Ariz.* 309, 345 *P.*2d 776 (1959) (only absence of a quorum of sixteen at grand jury sessions will taint its action); *State v. Blyth,* 226 *N.W.*2d 250 (Iowa 1975) (only absence of quorum of five will be prejudicial); *People v. Colebut,* 86 *Misc.*2d 729, 383 *N.Y.S.*2d 985 (Sup.Ct.1976) (although decision would not be given retroactive effect so as to require dismissal of indictments in this case, court empaneling grand jury in future must charge that grand jurors who join in indictment must have been present and must have heard all essential and critical evidence).

Our Court has not yet addressed the issue. Our statute and our rules do not establish what constitutes a grand jury quorum, except to provide that the panel not exceed twenty-three, *N.J.S.A.* 2A:73–1, and that at least twelve grand jurors must vote to indict. *R.* 3:6–8(a). In *State v. Reynolds,* 166 *N.J.Super.* 570 (Law Div.1979), Judge Lane concluded that when only eleven of the necessary twelve grand jurors required to return an indictment were present to hear the entire presentation of the evidence to the grand jury, the indictment must fail.

In this case, it does not appear that the defect in the proceedings was the lack of a necessary quorum. What happened was that the grand jury clerk failed to tally the individual votes of the grand jurors. The clerk recorded the vote by running a line down the tally sheet, noting at the bottom "12 plus." When the grand jurors were polled nearly a year later, only nine stated that they had voted to indict Fricchione on the second count. The problem would be greatly magnified if the trial court were

to undertake now to gather the recollections of the grand jurors as they pertained to Del Fino then. Our system deeply distrusts the later impeachment of a juror's vote. *State v. Athorn*, 46 *N.J.* 247, 251, *cert.* den., 384 *U.S.* 962, 86 *S.Ct.* 1589, 16 *L.Ed.*2d 674 (1966); *see People v. Horney*, 124 *Misc.*2d 22, 476 *N.Y.S.*2d 967 (Sup.Ct.1984) (a court may not delve into mental processes of a juror nor into deliberations of jury acting as a whole with regard to the jury verdict).

For the future, the necessity for insuring that the grand jury be informed of all the evidence should be underscored. As the Supreme Court stated in *Wood v. Georgia*, 370 *U.S.* 375, 82 *S.Ct.* 1364, 8 *L.Ed.*2d 569 (1962), "[the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution * * *." *Id.* at 390, 82 *S.Ct.* at 1373, 8 *L.Ed.*2d at 580. "It is that body which determines whether 'a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.'" *United States v. Provenzano*, 688 *F.*2d 194, 202 (3d Cir.), *cert.* den., 459 *U.S.* 1071, 103 *S.Ct.* 492, 74 *L.Ed.*2d 634 (1982) (quoting *Wood v. Georgia, supra,* 370 *U.S.* at 390, 82 *S.Ct.* at 1373, 8 *L.Ed.*2d at 580).

█ In fulfilling that constitutional role of standing between citizens and the state, there is no reason that grand jurors not be informed of all evidence before the panel. Grand jury proceedings are now stenographically recorded. *R.* 3:6–6(b). If any necessary juror voting to indict has been obliged for important cause to be absent from a particular session, that juror may read the transcript of the proceedings in order to become informed. *See United States v. Camiel, supra,* 503 *F.Supp.* 769 (a juror who has been absent may keep abreast of the evidence by reviewing the transcripts or tapes of the missed sessions). In charging the grand jury under Rule 3:6–3, the court should charge the jurors that those who join in the indictment must have been present and have heard or otherwise have informed themselves of the evidence presented at each session.

■ The grand jury has always occupied a high place as an instrument of justice in our system of criminal law—so much so that it is enshrined in both our federal and state constitutions. *U.S. Const. amend. V; N.J. Const.* (1947) art. I, para. 8. We expect properly charged jurors to exercise with responsibility and integrity that "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions," *Branzburg v. Hayes,* 408 *U.S.* 665, 686–87, 92 *S.Ct.* 2646, 2659–60, 33 *L.Ed.*2d 626, 643 (1972) (footnote omitted), and to inform themselves properly and adequately of the evidence necessary to discharge their constitutional function. To expect less casts a disparaging light on the institution. Rule 3:6–5 requires that the grand jury clerk record the vote of individual grand jurors. There is simply no justification for the grand jury clerk's recording of "12 plus" votes. That cannot be tolerated. Since the records of grand jury proceedings are readily available to defendants on request in New Jersey, *R.* 3:13–3(a)(3), the record will establish satisfaction of these requirements without evidentiary hearings.

In this case, we conclude that in the absence of a timely challenge to the indictment, it would be an excess exercise of our supervisory power to attempt to reconstruct the processes of this grand jury now. The grand jury panel that voted in favor of the indictment satisfied itself that its function had been properly discharged when it returned the indictment. It appears that the foreman voted against the indictment but signed the bill, an indication that he understood that the clerk correctly polled the jury. In addition, one of the grand jurors who moved the bill against Fricchione stated a year later that he voted against the bill. We are satisfied that inquiry now, over three years later, would be improper.

No one suggests that there has been any fundamental taint of the grand jury process, *State v. Hart,* 139 *N.J.Super.* 565 (App.Div.1976), or bias or prejudice in the panel, *Rose v. Mitch-*

*ell,* 443 *U.S.* 545, 99 *S.Ct.* 2993, 61 *L.Ed.*2d 739 (1979), or "that the grand jury had before it no substantial or rationally persuasive evidence upon which to base its indictment * * *." *Costello v. United States,* 350 *U.S.* 359, 364, 76 *S.Ct.* 406, 409, 100 *L.Ed.* 397, 403 (1956) (Burton, J., concurring). Were we to sense any such fundamental injustice, we would not hesitate to call for further proceedings. As noted, the co-conspirator, Fricchione, has since been re-indicted. What we must focus on now is the fairness of the trial and the guilt or innocence of the defendant since the other points raised by defendant to his conviction were not addressed by the Appellate Division and were not the subject of our grant of certification.

The judgment of the Appellate Division is reversed and the cause remanded to consider the merits of defendant's appeal. Jurisdiction is not retained.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.