<div style="border:1px solid black; padding:1em;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0382-25

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

LENNY RITORTO,

    Defendant-Respondent.

_____

> Submitted January 27, 2026 – Decided March 4, 2026
>
> Before Judges Gooden Brown and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 25-04-0583.
>
> Bradley D. Billhimer, Ocean County Prosecutor, attorney for appellant (Samuel Marzarella, Chief Appellate Attorney, of counsel and on the briefs).
>
> Jennifer N. Sellitti, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

On September 8, 2024, police responded to the scene of a fatal accident on the Garden State Parkway (Parkway) after a fatal collision between a dirt bike, operated by defendant, Lenny Ritorto, and a motorcycle operated by Antonio Caprara, who died at the scene. It was apparently undisputed the collision occurred as defendant was travelling in an access lane entering the Parkway. An Ocean County grand jury subsequently returned an indictment charging defendant with third-degree causing death while driving unlicensed, N.J.S.A. 2C:40-22(a).

Defendant moved to dismiss the indictment, contending in part the jury instructions were incorrect and incomplete, N.J.S.A. 2C:40-22(a) is inapplicable in these circumstances, and the statute is vague as applied to dirt bikes. Specifically, defendant argued he possessed a valid New Jersey driver's license, and the law does not require a special license to operate his dirt bike even on a public roadway, and thus the grand jury was improperly instructed a motorcycle endorsement was required. He further asserted the State failed to instruct the grand jury the Motor Vehicle Code prohibits dirt bikes on public roadways but authorizes dirt bikes to enter or ride parallel to public roadways for the limited purpose of crossing from a private off-road location. See N.J.S.A. 39:3C-17.

2

The trial court dismissed the indictment. Without legal analysis, the trial court rejected defendant's claim the criminal statute did not apply to dirt bikes which do not require licenses. The court simply stated the State correctly advised the grand jury licenses are not required to operate a dirt bike unless "the bike is taken on the public roadway," which necessitates a motorcycle endorsement. However, the court dismissed the indictment because it alternatively found the State withheld "exculpatory evidence" by failing to advise the grand jury defendant "may not have been required to be licensed if he was only crossing or paralleling the road in order to get to an off-road site." On the State's motion for reconsideration, the State argued it need not have advised the grand jury of the public roadway exceptions for dirt bikes, as the Parkway is a "limited access roadway" on which dirt bikes are expressly prohibited in all circumstances. See N.J.S.A. 39:3C-17(a).

The State appeals the July 21, 2025 order dismissing the indictment as well as the August 28, 2025 order denying reconsideration. It argues:

> THE [COURT]'S DECISION DISMISSING THE INDICTMENT WAS ERRONEOUS AND MUST BE REVERSED.
>
> A. THE STATE PRESENTED AN ADEQUATE PRIMA FACIE CASE TO SUPPORT THE CHARGE.

3

B. THE STATE DID NOT FAIL TO PRESENT CLEARLY EXCULPAT[OR]Y EVIDENCE THAT DIRECTLY NEGATED DEFENDANT'S GUILT TO THE GRAND JURY NOR DID IT OMIT OR MISLEAD THE GRAND JURY.

Because we are satisfied the State's grand jury presentation was flawed by inaccurate and incomplete jury instructions—improperly provided in part through a testifying police witness—we affirm, although for reasons different than those expressed by the trial court. See State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011) ("[B]ecause an appeal is taken from a trial court's ruling rather than reasons for the ruling, we may rely on grounds other than those upon which the trial court relied.").

I.

The State presented its case to the grand jury on April 16, 2025, exclusively through the testimony of State Police Trooper Adam Harchetts. Prior to the trooper's testimony, the prosecutor advised the grand jury it was to consider whether defendant

> did operate a motor vehicle without ever having been issued a driver's license by this or any other state, . . . specifically a motorcycle license, and was involved in a motor vehicle accident resulting in the death of another, specifically, [decedent].

4

The prosecutor then instructed the grand jury concerning the law, reading in its entirety N.J.S.A. 2C:40-22(a), which in relevant part provides:

> A person who, while operating a motor vehicle in violation of [N.J.S.A.] 39:3-40, or while the person's driver's license is suspended or revoked in any State, . . . or without ever having been issued a driver's license by this or any other State, . . . is involved in a motor vehicle accident resulting in the death of another person, shall be guilty of a crime of the third degree.

Additionally, the prosecutor instructed on the definitions of motorcycle and motor vehicle, stating only:

> The definition of motorcycle includes motorcycles, autocy[cl]es, motor bikes, bicycles with motor attached and all motor-operated vehicles of the bicycle or tricycle type, except motorized bicycles, low-speed electronic -- electric bicycles, and low-speed electric scooters as defined in this section, whether the motive power be a part thereof or attached thereto and having a saddle or seat with driver sitting astride or upon it or a platform on which the driver stands.
>
> And a vehicle means every device in, upon or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks or low-speed electric bicycles, low-speed electric scooters, or motorized bicycles.

Trooper Harchetts then testified he responded to reports of the collision on September 8, 2024, in the area of Parkway milepost 81.7. The trooper explained he reviewed video footage, which was not presented to the grand jury,

5

showing defendant "entering the Parkway." He testified the two motorcycles were not travelling together and, according to witnesses, collided as defendant was riding in the "merge lane."

Trooper Harchetts then testified defendant's driver's license did not include a motorcycle endorsement, which led to the following exchange:

> [PROSECUTOR:] And that would mean he was not permitted to operate this motorcycle on a public roadway. Is that right?
>
> [TROOPER HARCHETTS:] Correct.
>
> [PROSECUTOR:] To be clear, he was operating a dirt bike. Correct?
>
> [TROOPER HARCHETTS:] Yes.
>
> [PROSECUTOR:] And that usually doesn't require an endorsement or any type of certification on your license. Is that right?
>
> [TROOPER HARCHETTS:] Correct.
>
> [PROSECUTOR:] Only if you're driving on private roads. Is that right?
>
> [TROOPER HARCHETTS:] Yes.
>
> [PROSECUTOR:] However, once an individual takes that dirt bike onto a public roadway, they're required to have that proper endorsement on their license. Correct?
>
> [TROOPER HARCHETTS:] Correct.
>
> [PROSECUTOR:] And the Garden State Parkway is a public roadway?

6

[TROOPER HARCHETTS:]  Correct.

[PROSECUTOR:]  And that would make this dirt bike essentially a motor vehicle once he entered that Parkway.  Correct?

[TROOPER HARCHETTS:]  Yes.

No further legal instructions followed.  In particular, no law was presented to support the trooper's testimony concerning the alleged licensing requirement in these circumstances.

Defendant's central argument before the trial court in seeking dismissal of the indictment challenged as "misguided" the State's contention a dirt bike "equat[es]" to a motorcycle for licensing purposes whenever it enters a public roadway.  He argued no statute, caselaw, or regulation required him to secure a motorcycle endorsement on his license, rendering N.J.S.A. 2C:40-22(a) inapplicable as a matter of law.

Defendant further asserted the grand jury should have been advised N.J.S.A. 39:3C-17 actually "restricts the operation of an ATV [(all-terrain vehicle)] on any public street or highway except . . . for the very limited purpose of crossing, paralleling . . . in order to get to an ATV off road site" which, as defendant admitted at the scene, was "exactly what [defendant] was doing." Thus, defendant contended "patently incorrect statements of law," including "missing . . . legal definitions of motor vehicle limitation on use of the roadway

7

A-0382-25

[and] mental state" required the indictment's dismissal. He further advanced a "void for vagueness argument" arguing "the law does not with sufficient clarity prohibit the conduct against which it is sought to be enforced"; and that "there[] [was] no sufficient nexus to make this a crime" as "he didn't realize that his conduct was criminal."

The prosecutor responded claiming the distinction between the definitions of motorcycle and dirt bike "was for the grand jury to decide," and argued she "read the definition of motorcycle" and "motor vehicle," and "[t]he officer explicitly stated that [defendant] was riding a dirt bike." She argued "it was a dirt bike until [defendant] went on that public roadway."

The State represented the video, although not presented to the grand jury, showed "[defendant] was not trying to get from one trail to the other," instead depicting defendant "driving up the merge lane" so "he[] [was] not off road." The State asserted defendant's argument "that he was crossing the Parkway" was "belied by the pictures and by his actions in speeding up . . . that merge lane." The State maintained it therefore "d[id]n't have to, by the statute[,]" present "the affirmative defenses and . . . exculpatory information," as "[a]ll [it] really had to prove [wa]s that [defendant] did operate that motor vehicle"; "[defendant] was never issued a driver[']s license" or "endorsement"; "[defendant] was

A-0382-25

involved in a . . . motor vehicle accident"; "[a]nd that it obviously resulted in the death of another."  The State further argued "the statute [wa]s not vague," and "[t]he State presented more than enough information" regarding "the nexus between the statute and [defendant's] conduct."

In dismissing the indictment, the trial court first summarized the controlling facts, although some were not presented to the grand jury.  The court found when defendant was

> merging onto the Garden State Parkway, . . . defendant was involved in a motor vehicle collision that resulted in the death of another. . . . Investigating officers learned that as . . . defendant entered the [P]arkway at exit [eighty-one], [decedent] was traveling up the [P]arkway, passing vehicles on the shoulder. . . . Officers were able to obtain video footage of . . . defendant entering the [P]arkway, operating an orange dirt bike. . . . Officers discovered . . . defendant lacked the proper endorsement on his license to operate said bike. . . . The collision resulted in both individuals being ejected from their respective bikes. . . . [Decedent] was pronounced deceased at the scene due to multiple blunt force injuries. . . . Defendant sustained a serious leg injury.

Without elaboration, the court next found "unpersuasive" defendant's argument the conduct was not subject to N.J.S.A. 2C:40-22(a) because he possessed a valid driver's license, which did not require a motorcycle endorsement.  Citing the trooper's testimony, the court found defendant

adequately demonstrated defendant did not possess the requisite license endorsement necessary to take the bike on the public roadway. The court stated the dirt bike fell "within the category of motorcycle, which is under the umbrella of 'motor vehicle' for statute purposes." Thus, it concluded N.J.S.A. 2C:40-22 was not void for vagueness because the "definitions to key terms" were provided.

However, finding the instructions were erroneous necessitating the indictment's dismissal, the court determined "the State failed to present exculpatory evidence to the grand jury" because "the State failed to advise the grand jury of the exception [in] N.J.S.A. 39:3C-17." The court recognized "this exception may be considered 'self-serving' and 'completely belied by the footage[,]'" but "the information presented to the grand jury was not entirely accurate" due to the omission of this exception and, therefore, the State "interfered with [the grand jury's] decision-making process and subverted its ability to fairly and impartially decide whether to indict."

The trial court then denied the State's motion for reconsideration, finding the State raised for the first time its contention the public roadway exceptions were not applicable to "limited access roadways" like the Parkway. It found the

State elected to advise the grand jury the Parkway was a "public roadway" and never introduced the term "limited access roadway," or its significance.

The court stated "the grand jury was informed that 'once an individual takes a dirt bike onto a public roadway, they're required to have that proper endorsement on their license,'" reiterating "the grand jury should have been [also] informed that 'once an individual takes a dirt bike onto a public roadway, they're required to have proper endorsement on their license,' except as provided by N.J.S.A. 39:3C-17." The court further noted the State's new argument regarding limited access highways was "concern[ing]" because "under the State's revised position, the grand jury was misinformed and misled."

II.

On appeal, the State argues the trial court erroneously dismissed the indictment because it presented sufficient evidence and legal instructions and did not withhold exculpatory evidence or defenses directly negating defendant's guilt, as none existed. Defendant does not cross appeal but contends the trial court properly dismissed the indictment because "defendant merely did not have a license he was not required to have," and "the grand jury needed to understand this possibility . . . to return a valid indictment."

A-0382-25

We review the trial court's decision on defendant's motion to dismiss the indictment for an abuse of discretion. State v. Saavedra, 222 N.J. 39, 55 (2015). "A trial court's exercise of this discretionary power will not be disturbed on appeal unless it has been clearly abused." Id. at 55-56 (quoting State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994)) (internal quotation marks omitted). "However, our review of a trial judge's legal interpretations is de novo." State v. Eldakroury, 439 N.J. Super. 304, 309 (App. Div. 2015); see also State v. Twiggs, 233 N.J. 513, 532 (2018) (citing State v. S.B., 230 N.J. 62, 67 (2017)) (recognizing when a decision to dismiss an indictment hinges on a purely legal question, we need not defer to the motion court's interpretations). When the trial court "'misconceives the applicable law, or misapplies it to the factual complex,' the reviewing . . . court must adjudicate the controversy anew." Cobo by Hudson Physical Therapy Servs. v. Mkt. Transition Facility, 293 N.J. Super. 374, 383 (App. Div. 1996) (quoting Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960)).

Courts "should dismiss an indictment only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective." Twiggs, 233 N.J. at 531-32 (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)) (internal quotation marks omitted). Generally, "[a]s long as the

12

State presents some evidence establishing each element of the crime to make out a prima facie case, a trial court should not dismiss an indictment." State v. Nicholson, 451 N.J. Super. 534, 541 (App. Div. 2017) (quoting State v. Feliciano, 224 N.J. 351, 380 (2016)) (internal quotation marks omitted).

Article I, Paragraph 8 of the New Jersey Constitution provides that, with few exceptions, "No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." The grand jury bears the "constitutional role of standing between citizens and the state." State v. Del Fino, 100 N.J. 154, 164 (1985). If there is reason to "believe that a crime occurred and that the defendant committed it," such that "there is some evidence establishing each element of the crime to make out a prima facie case," the grand jury must allow the accused to face trial. Saavedra, 222 N.J. at 57 (quoting State v. Morrison, 188 N.J. 2, 12 (2006)). Simply, "the grand jury is asked to determine whether 'a basis exists for subjecting the accused to a trial.'" Hogan, 144 N.J. at 227 (quoting Trap Rock Indus., Inc. v. Kohl, 59 N.J. 471, 487 (1971)).

Conversely, the grand jury must decline to return an indictment if the State does not present such evidence to "protect the innocent from unfounded prosecution," Hogan, 144 N.J. at 227-28, as it serves as the "primary security to

13

the innocent against hasty, malicious, and oppressive persecution," Del Fino, 100 N.J. at 164 (quoting Wood v. Georgia, 370 U.S. 375, 390 (1962)).  Further, the grand jury was never intended to be "a rubber stamp of the prosecutor's office."  Hogan, 144 N.J. at 236.

"Incomplete or imprecise grand-jury instructions do not necessarily warrant dismissal of an indictment; rather, the instructions must be 'blatantly wrong.'"  State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010) (quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)).  Critically, "an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law."  Ibid.; see also State v. Tucker, 473 N.J. Super. 329, 344 (App. Div. 2022).

Here, as the State correctly instructed the grand jury, to return an indictment for violation of N.J.S.A. 2C:40-22(a), the grand jury was required to find sufficient evidence showing defendant (1) "operat[ed] a motor vehicle"; (2) "without ever having been issued a driver's license" in this or any other jurisdiction; (3) and was "involved in a motor vehicle accident"; (4) "resulting in the death of another."  In order to fairly consider whether the evidence supported these elements, sufficient legal instructions were essential.  We are convinced the State's instructions were at best fatally sparse, incomplete, and

misleading, and, at worst patently incorrect, undermining the validity of the indictment.

Some review of the various statutes implicated by the parties' arguments is essential to appreciating the deficiency. The Motor Vehicle Code addresses "operational limitations" of dirt bikes, prohibiting their presence on public roadways except in limited circumstances. N.J.S.A. 39:3C-17 provides:

> a. No person shall operate a . . . dirt bike upon limited access highways[1] or within the right-of-way limits thereof.
>
> b. No person shall operate a . . . dirt bike upon the main traveled portion or the plowed snowbanks of any public

---

[1] Our Code offers multiple consistent definitions of "limited access highway." See, e.g., N.J.S.A. 27:7A-1(a) ("a highway especially designed for through traffic over which abutters have no easement or right of light, air or direct access, by reason of the fact that their property abuts upon such way"); N.J.S.A. 27:5-7 ("a highway especially designed for through traffic, over which abutters have no easement or right of light, air or direct access by reason of the fact that their property abuts upon that limited access highway"); N.J.S.A. 39:1-1 ("every highway, street, or roadway in respect to which owners or occupants of abutting lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street, or roadway; and includes any highway designated as a 'freeway' or 'parkway' by authority of law").

A-0382-25

street or highway[2] or within the right-of-way limits thereof except as follows:

> (1) Properly registered . . . dirt bikes may cross, as directly as possible, public streets or highways, except limited access highways, provided that such crossing can be made in safety[3] and that it does not interfere with the free movement of vehicular traffic approaching from either direction on the public street or highway. Prior to making any such crossing, the operator shall bring the . . . dirt bike to a complete stop. It shall be the responsibility of the operator of a . . . dirt bike to yield the right-of-way to all vehicular traffic upon any public street or highway before crossing the public street or highway.

> (2) Whenever it is impracticable to gain immediate access to an area adjacent to a public highway where a . . . dirt bike is to be operated, the . . . dirt bike may be operated adjacent and parallel to the public highway for the purpose of gaining access to the area of operation. . . .

> [(Emphasis added).]

---

[2] A "[p]ublic road or highway" is defined as "every street, road or highway open to the use of the public for the purpose of vehicular travel." N.J.S.A. 39:4-56.8(a)(2).

[3] To the extent N.J.S.A. 39:3C-17(b)(1) permits a "[p]roperly registered . . . dirt bike [to] cross . . . public streets or highways," we note the State argued defendant's purported crossing of the Parkway "would necessitate [crossing] at least six lanes o[f] traffic . . . , including crossing a metal barrier separating the north and southbound lanes."

A-0382-25

Importantly, the Motor Vehicle Code includes no express licensing requirement for dirt bikes; it does not contain any provision stating that a dirt bike on a public roadway for any reason requires a motorcycle endorsement or motorcycle license. Dirt bikes are, however, comprehensively regulated pursuant to N.J.S.A. 39:3C-1 to -36. Regarding dirt bike registration requirements, N.J.S.A. 39:3C-3 provides:

> Except as otherwise provided, no . . . dirt bike shall be operated or permitted to be operated on or across a public highway or on public lands[4] or waters of this State unless registered and numbered by the owner thereof as provided by . . . [N.J.S.A.] 39:3C-1 et seq.

N.J.S.A. 39:3C-13 expressly provides "[n]o political subdivision of the State shall require additional licensing or registration of . . . dirt bikes" covered by N.J.S.A. 39:3C-1 et seq.

Comparatively, N.J.S.A. 39:3-10(a) mandates "[a] person shall not drive a motor vehicle on a public highway in this State unless the person is . . . in possession of a validated . . . basic driver's license issued to that person." N.J.S.A. 39:3-10(e) further provides a person "shall be issued a motorcycle

---

[4] Though N.J.S.A. 39:3C-6 now provides "a . . . dirt bike solely operated for use on a farm shall be exempt from the registration and numbering requirements," the legislative history reveals a 2009 amendment which replaced the following language: "No registration shall be required for a snowmobile or all-terrain vehicle operated on private property." See L. 2009, c. 275, § 6.

license or endorsement" upon completion of certain courses and requirements not germane here. Additionally, N.J.S.A. 39:3-10(j)(3) clarifies "[a] driver's license for motorcycles may be issued separately, but if issued to the holder of a basic driver's license, it shall be by endorsement on the person's basic driver's license."

In support of its position defendant required a motorcycle endorsement to operate his dirt bike on the Parkway, the State weaves together the definitions of "motor vehicle," defined as a "vehicle[] propelled otherwise than by muscular power," N.J.S.A. 39:1-1; "motorcycle," which includes "motorcycles, . . . motor bikes, bicycles with motor attached and <u>all motor-operated vehicles of the bicycle</u> or tricycle type," <u>ibid.</u> (emphasis added); and "dirt bike," defined as "any two-wheeled <u>motorcycle</u> that is designed and manufactured for off-road use only," N.J.S.A. 39:3C-1 (emphasis added). Beyond these definitions, the State cites no authority to support the public roadway dirt bike licensing requirement it conclusively presented to the grand jury to secure this indictment.[5]

---

[5] Notably, the Motor Vehicle Commission's website advises: "You do not need a permit or license to operate an all-terrain vehicle . . . in New Jersey" under the heading "All-terrain vehicle (ATV) or Dirt Bikes: license." Motorized Bicycle/ATV/Snowmobile/Agricultural, New Jersey Motor Vehicle Comm'n, https://www.nj.gov/mvc/vehicletopics/mopedatv.htm#atv (last visited Jan. 14, 2026).

Indeed, the record of the grand jury presentation reflects the State never instructed the jury regarding the law requiring defendant to possess a motorcycle endorsement to satisfy the requirements of N.J.S.A. 2C:40-22(a). Instead, the State permitted Trooper Harchetts to decisively inform the jury as fact defendant required but lacked a motorcycle endorsement to operate on the Parkway at the time of the collision. Not only did the police witness improperly provide his opinion regarding the law and defendant's violation of it, see State v. Trinidad, 241 N.J. 425, 445 (2020) (noting "police officers may not opine directly on a defendant's guilt in a criminal case"), the State abdicated its obligation to instruct the jury with controlling law, leaving the grand jury unable to perform its own independent function.[6] We are satisfied this error and omission alone warrant dismissal of the indictment. Thus, exercising our discretion to affirm the dismissal on different grounds, we agree the presentation was too deficient to support the charge returned. See Adubato, 420 N.J. Super. at 176.

Should the State elect to re-present the case, we offer the following. The trial court never sufficiently provided its reasons for rejecting defendant's

---

[6] We note our disagreement with the State's contention before the trial court that it "was for the grand jury to decide" the distinction between the definitions of motorcycle and dirt bike, particularly when the prosecutor never defined "dirt bike" or provided any of the regulations governing their operation.

A-0382-25

central argument that N.J.S.A. 2C:40-22(a) does not apply to his conduct because no license was required to operate his dirt bike. That question is not before us; nor has it been sufficiently briefed for our consideration.

We observe the plain language of N.J.S.A. 2C:40-22(a) requires the State to demonstrate defendant "operat[ed] a motor vehicle . . . <u>without ever having been issued a driver's license</u>." (Emphasis added). Further, its legislative history confirms its intent to reach "a driver <u>who has never had a driver's license</u> who is involved in an accident . . . ." <u>L.</u> 2005, <u>c.</u> 230, at 3 (emphasis added). Thus, without deciding, we note the open question persists regarding whether the absence of a motorcycle endorsement on defendant's otherwise valid driver's license suffices to satisfy the statute on these facts.[7]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[7] We need not reach the State's contention the access requirements are not exculpatory defenses to N.J.S.A. 2C:40-22(a). However, without adequate resolution of the threshold legal issue and again without deciding, we are not convinced the trial court adequately provided its reasons for determining N.J.S.A. 39:3C-17's exceptions to public roadway access prohibitions are implicated legally or factually here. Even assuming the access exceptions could theoretically provide defenses to licensing-based criminal offenses, we question whether any arguable evidence of defendant's "crossing" the Parkway was clearly exculpatory warranting further instructing the grand jury or simply potentially raised fact questions more properly reserved for a petit jury. Additionally, we note if the Parkway falls within the definition of "limited access roadway," as the State suggests, defendant's operation on the Parkway at the time of the collision would have been prohibited without exception.

A-0382-25