THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
ROBERT DEEGAN, PLAINTIFF IN ERROR.

Argued May 15, 1945—Decided September 27, 1945.

264

For the plaintiff in error, *John B. Zabriskie* and *Emil M. Wulster.*

For the defendant in error, *Walter G. Winne.*

The opinion of the court was delivered by

DONGES, J. Plaintiff in error was convicted on February 5th, 1945, of murder in the first degree without a recommendation of life imprisonment. He was convicted upon trial on March 23d, 1944, on the same indictment, of murder in the first degree without recommendation of life imprisonment, which conviction was reversed by this court. *State* v. *Deegan,* 132 *N. J. L.* 261.

The facts briefly stated are that on January 14th, 1944, Mrs. Ethel Hermann, aged forty, was attacked by plaintiff in error, Deegan, as she was on her way from her home in Dumont, Bergen County, to the house of a friend to spend the evening, the purpose of the attack being to rob her. There were two defendants named in the indictment, Deegan and one Hoffman, who were together in Dumont with two young women with whom they had been rooming in a New York hotel. They were short of money and had gone to Dumont, where Deegan's parents resided, for the purpose of obtaining money to go to Boston, Massachusetts, with these young women. The uncontradicted testimony is that it was their intention to first seek money at the home of Deegan from his parents, and, failing that, to obtain it by robbery or any other available means. For that purpose, after failing to obtain it

from his parents, Deegan got a baseball bat at his home and concealed it under his coat. After following Mrs. Hermann for about half a mile, Deegan asked her where a certain place was, and upon her reply that she did not know, Deegan struck her over the head, from the rear, with the bat. She immediately fell, and Deegan dropped the bat and stole her pocketbook. Thereupon, Deegan and Hoffman fled to the Dumont railroad station, where they joined the two girls and went back to New York. Deegan was apprehended in New York and made a confession of the incident. On the way to the railroad station Deegan, apparently conscious of the act he had committed, said to Hoffman, "I wonder if I hit her too hard." Hoffman responded, "I don't think so. I don't know." Whereupon Deegan said, "I think I hit her too hard. I think I hit her too hard." She died as a result of the blow.

At the trial plaintiff in error was not a witness and there was no challenge of the facts leading up to the attack and the motive for the assault. In the absence of an adequate defense of insanity, there could be no question of the plaintiff in error's guilt and the propriety of the verdict upon the proofs.

Plaintiff in error argues twenty-six assignments of error and twenty-six specifications of cause for reversal. These generally have to do with alleged error in not sustaining the challenge to the array of jurors and the alleged denial to plaintiff in error of his right to present evidence in support of such challenge. Second, error in the selection of the jury. Third, error in the trial court's charge. Fourth, error in statements of the prosecutor of the pleas to the jury. Fifth, error in the admission and rejection of evidence. Sixth, that the verdict was against the weight of the evidence and was the result of mistake, bias and prejudice.

The challenge to the array is based upon the fact that the jury was struck by the judge who sat in the first trial, and alleges prejudice and partiality on his part. At the hearing on this challenge no evidence was submitted by plaintiff in error, but, subsequently, the judge permitted the plaintiff in error to submit evidence of witnesses and counsel for the plaintiff in error were sworn. They testified to the effect that

the trial judge, after the conviction in the first case and its reversal by this court, commented that there was no question of the defendant's guilt and that the accused should have been "hung, drawn and quartered." The judge disclaimed any bias or prejudice against the accused, but, to avoid any question as to his ability to act fairly, he disqualified himself and another judge sat in the trial now under review.

The challenge to the array was demurred to by the state, and the judge ruled that there being no reasons stated in the challenge that would disqualify the jurors, and no proofs submitted to justify sustaining the challenge, it should be dismissed. There was no proof that the jury was not properly drawn or that the jurors on the list were disqualified for any reason. The names were taken from the struck jury list prepared by the jury commissioners.

As has been held in a number of cases by this court, the challenge is radically defective in that it fails to set out any facts disclosing that the judge was improperly interested in the outcome of the case against the plaintiff in error, or that the jurors were improperly drawn, or were biased or prejudiced against plaintiff in error. *State* v. *Barker,* 68 *N. J. L.* 19; *State* v. *Bolitho,* 103 *Id.* 246.

In *State* v. *Barker, supra,* Chief Justice Gummere said:

"Assuming, however, that the presence upon the panel of persons who are disqualified is good ground of challenge to the array, the challenger must set forth in his challenge the facts from which the disqualification arose. Whether or not a man is disqualified to serve as a juror is a conclusion of law to be drawn by the court from the facts submitted to it. In *Mann* v. *Glover,* 2 *Gr.* 195, 203, Chief Justice Hornblower says: 'A challenge must be in such terms that the court can determine whether the facts, if true, are sufficient to support such challenge. The defendant says he challenges the juror because "he does not stand indifferent between the parties." But these words do not constitute a challenge; they express only the reason for making the challenge or the judgment or conclusion of law consequent upon finding the ground of the challenge to be true. He must go further, and state *why* the juror does not stand indifferent; he must state some facts or

circumstances which, if true, will show that the juror is positively and legally disqualified.' "

In *State* v. *Bolitho, supra,* the challenge to the array was based upon the alleged partiality and bias of the sheriff who drew the jury. In that case it was said:

"It is to be observed that the challenge is radically defective, in that it fails to set out any facts disclosing the sheriff to have been improperly interested in the outcome of the trial of the case against the defendant. * * * The panel of petit jurors was drawn according to law by the jury commissioners, and the fact that the sheriff was subsequently disqualified on the ground of such an interest in the cause as to disqualify him from participating in drawing a panel of grand jurors, standing alone, did not have the effect of invalidating the act of the jury commissioners or affect the lawful status of the petit jury.

"Moreover, the challenge under consideration, like the challenge to the judge, has the same radical defect, in that it contains solely a statement of the reasons for making the challenge. This has been held to be insufficient in law. *Mann* v. *Glover,* 14 *N. J. L.* 195, 203. In *State* v. *Barker,* 68 *Id.* 19, 21, the Supreme Court held that 'a demurrer only admits the facts set out in the pleading, and not then unless they are sufficiently pleaded.' "

The challenge to the array in the present case was properly overruled.

Assignments and specifications 2, 3, 4, 5, 6, 7, 8 and 9 have to do with alleged errors in the selection of the jury. These include questions propounded to jurors, which were objected to and the objections were sustained by the trial judge, and, in other instances, where the objections of plaintiff in error were overruled. In the light of the ultimate selection of a jury satisfactory to plaintiff in error, we deem it unnecessary to deal with these questions. The record discloses that, in each instance where objection was interposed and dealt with by the trial judge, the juror was either challenged by the state or defendant, or excused for cause. None of the jurors to whom propounded questions were the subject of objection or the basis of alleged error was sworn to serve

on the jury. After the defendant had exhausted his peremptory challenges, the record discloses that eight jurors had been accepted by both the state and the defendant and duly sworn to serve. Thereafter, only eight prospective jurors were called to complete the jury of twelve, with one alternate juror, or thirteen in all. The first called was declared by both the defendant and the state as "satisfactory" and sworn. The next juror called was peremptorily challenged by the state and excused. The next was excused by consent. The next called was declared by the state and defendant to be "satisfactory" and was sworn. The next was challenged by the state for cause, and excused. The next was declared by both parties to be "satisfactory" and was sworn. The same was true of the next one called, making twelve in all. Thereupon, it was suggested that an alternate juror be drawn, which was agreed to, and this juror was declared to be satisfactory and sworn.

Inasmuch as defendant offered no objection to any juror drawn after exhausting his challenges, but expressed approval and satisfaction as to each juror thereafter drawn and sworn, it is apparent that he suffered no injury by the rulings of the trial judge with respect to questions propounded to prospective jurors, or with respect to the excusing or failure to excuse jurors for cause. Defendant made no objection to or motion with respect to any of the jurors sworn.

In *State* v. *Morehous,* 97 *N. J. L.* 285, 288, this court held, in an opinion by Mr. Justice Katzenbach, that in the trial of a.challenge to a juror, the court's finding upon a question of fact is conclusive and not reviewable, citing *Paterson* v. *State,* 48 *Id.* 382. This case further held that "The right of a defendant is one of exclusion and not of selection. *State* v. *Langhaus,* 95 *Id.* 213."

In the instant case it is clear from the record that defendant suffered no injury by the action of the trial judge in the selection of the trial jury, inasmuch as defendant challenged or had excused every juror not satisfactory to him and expressed approval and satisfaction with the jury selected. It conclusively appears that defendant was not prejudiced in maintaining his defense on the merits. This situation is very

like that in *State* v. *Lynch,* 103 *N. J. L.* 64, where it appears that three jurors were sworn after defendant had exhausted his challenges, but expressed satisfaction with those so drawn. This court said, "The right of the defendant, so far as the empanelling of the jury was concerned, was to have twelve impartial members of that body selected, and that right was accorded to him. In this situation, it cannot be successfully contended that 'he was prejudiced in maintaining his defense upon the merits,' either by the fact that three members of the special panel were wrongly named, or by the fact that certain challenges for cause, as he contends, were improperly overruled." *State* v. *Calabrese,* 107 *Id.* 115. *Cf.* 24 *C. J. S.* 888, *et seq.*

The only other question raised with respect to the jury is that one whose name appeared on the panel of jurors was not served. Inasmuch as the panel was not exhausted when the full number of jurors were chosen, defendant had every opportunity for the selection of a fair and impartial jury. Our courts have repeatedly held that absence of a juror is not harmful to the defendant. *Brown* v. *State,* 62 *N. J. L.* 666; *State* v. *Rosenthal,* 85 *Id.* 564; *affirmed,* 86 *Id.* 705; *State* v. *Martin,* 94 *Id.* 139; *State* v. *Gallo,* 128 *Id.* 172.

The next point urged is that it was error to admit in evidence certain photographs of the decedent and her family. Counsel for defendant stated, "I do not see the materiality of this. There is no question of identity in this case." The proof was that these articles were in the decedent's possession when she was attacked: were taken by the defendant from the person of the decedent and thrown away some distance from the place of attack. These exhibits might well have been an important part of the state's case to establish robbery as the motive of defendant, if the defendant had chosen to deny such purpose. They were part of the *res gestæ* and admissible as part of the state's case. *State* v. *Lasler,* 71 *N. J. L.* 586; *State* v. *Morehous,* 97 *Id.* 285.

The next point has to do with the trial judge's sustaining an objection by the prosecutor to a question asked a state's witness, Captain of Police Allmers, on cross-examination, as follows: "You knew for a long time there was something

wrong with his mind?" The witness was not interrogated on his direct examination on this subject. Several questions were asked him on cross-examination about defendant's conduct, but no foundation was laid for the expression of opinion by this witness. In *State* v. *Morehous, supra,* it was held, "Lay witnesses on insanity may give their opinion of a person's sanity or insanity provided such opinions are based on facts within the knowledge of the witness and stated. *Genz* v. *State,* 58 *N. J. L.* 482." In the instance under consideration there was no foundation laid for the question and it was properly overruled.

The next point relates to the drawing of the jury and has been heretofore dealt with.

It is next asserted that it was harmful error for the court to overrule a question to the witness Morris Deegan, father of the defendant, "Q. Did Mr. Allmers give you any advice in connection with Bob?" This question was not asked to contradict any testimony of Captain Allmers, or for any proper reason. The prosecutor said that if it was intended to contradict any testimony of Allmers it might be asked in a proper manner. Whereupon, counsel for the defendant did not pursue the matter. There was no error in this ruling.

The next point has to do with the refusal of the court to admit in evidence the record of William Harry McKim, grandfather of the defendant, who was for some time a patient at the Middletown State Hospital, which, it was testified, is a hospital for the insane. The witness produced was secretary to the director of the hospital. There was no proof of any knowledge by the witness of the content of the proffered paper. A witness may testify to entries made by him, but may not testify to entries made by others. *State* v. *Shapiro,* 89 *N. J. L.* 319, 321.

Plaintiff in error alleges error in the court's striking part of the answer of the witness Helen Dickson, a school teacher, to the question by his counsel, "You see the report card?" answered, "I saw the report card and it was a total failure." The last statement was properly struck. Apart from any question as to the competency of her answer as to the content of the report, it was not in answer to a question. The ques-

tion related only as to whether or not she saw the report card. The first part of her answer was permitted to stand and she was not questioned further by counsel.

It is next urged that the striking of part of the testimony of the witness Myrtle E. Cole was error. The witness was asked, "Can you tell us what you observed about him over the period of years?" The witness answered at some length and finally said, before objection, "He was always good to children and to animals, and was always very glad to do anything for anybody." The prosecutor objected:

"Now, I object to the testimony, if your honor please, and ask to have it stricken. The questions should be confined to peculiarities, and not in praise of his conduct and relation to animals.

"Mr. Wulster: I think it is proper. She states her observation.

"The court: That portion of the answer will be stricken which is a recital of any praise of his conduct, and only that testimony permitted which tells of those peculiarities upon which the jury may base some opinion as to the mentality of the defendant.

"The prosecutor: Thank you.

"Mr. Wulster: May we have an exception on the record, sir?

"The court: Certainly."

The witness was not asked an opinion as to defendant's character or disposition. She was asked to tell what she observed. Obviously, the purpose of the question was to elicit what the witness observed that would indicate a normal or abnormal mental state. The court struck so much of the answer as was "a recital of any praise of his conduct." This was proper in view of the limitation of the question. Counsel did not ask the court to clarify his ruling, but took an exception thereto. The complaint now is that the court's ruling was not sufficiently specific to be understood by the jury. Apparently there was no doubt at the time as to what the court meant or counsel should have asked for clarification, which was not done. The witness was permitted to testify fully as to her observation of defendant's characteristics and mental quality, hence there was no error in this ruling.

The next point is that it was error to strike out part of the testimony of Edgar Hunt Deegan, a brother of the defendant. Counsel asked the witness, "*Q.* Just if you will tell us how he looked and how he acted and what he did, that you observed, as you grew up with him as his brother." After stating some things, the witness concluded, "And, well, my own personal observation was, as I grew up, and as I am now, that Bob did not or he has not, rather, the mentality of a boy ten years old." This portion was objected to and was stricken by the trial judge. As stated, a lay witness may give an opinion as to the sanity or insanity of a person, "provided such opinions are based on facts within the knowledge of the witness and stated." *State* v. *Morehous, supra.* In the case of this witness, the question did not seek his opinion as to defendant's mental age or condition. And the witness had not stated any of defendant's characteristics, except that he did not play with the witness and that defendant slept when he could be playing. Hence no factual foundation had yet been laid for the witness' opinion. But the portion of the answer stricken was volunteered by the witness and was not responsive. There was no error in this ruling.

The next point is that it was error to strike the answer to a question to Mrs. Deegan, the mother of defendant. She was asked, "Mrs. Deegan, do you know what your father died of? *A.* My father died in an insane asylum. I didn't like to say it, but he did." This answer was not responsive to the question. She was not asked where he died, but whether she knew the cause of his death. This she did not state. The trial judge stated that counsel might re-frame the question, but this was not done. The answer was properly stricken.

It is next urged that it was error to sustain the state's objection to a question propounded to one of defendant's medical expert witnesses. The army record of defendant, made at Fort George G. Meade, offered by defendant, was admitted in evidence, without objection, on the testimony of the assistant registrar of the State Hospital. He was not a physician. He was the custodian of records. There was no testimony by the medical man who examined or treated defendant. Defendant had whatever benefit flowed from the

exhibit, without the opportunity for the state to examine the persons who made it. In this report the following appeared, "Imp. Constitutional Psychopathic State. Inadequate Personality."

The question asked of the witness, Dr. William Leavitt, was, "*Q.* And can you tell the court and the jury what that means, a constitutional psychopathic state, and inadequate personality?" This was objected to as not being proper. The witness had previously been asked, "*Q.* But do you know what it means by that 'imp.'? *A.* I think it is 'impression.' *Q.* Oh, 'impression?' *A.* The word 'impression' is put down that way. That is what I think the diagnosis is." He was then asked the question that was overruled. It is apparent that, in the absence of testimony by the physician who made the report as to the meaning of the language used, it was improper for this witness to state what the examiner meant by the language used. In addition, there was no injury to defendant because another medical expert, called by the defendant, Dr. Geoffrey C. Burns, testified at considerable length as to the import of the content of the report and the meaning of the words "constitutional psychopathic state and inadequate personality." There was no error in the ruling complained of.

The next assignments and specifications, Nos. 20 and 21, have to do with the statement of the prosecutor with respect to the power of the Court of Pardons. The prosecutor stated in his summation, "I have defended men in this court who were convicted of murder in the first degree and are out on the street to-day. The last term of court, the Court of Pardons let a man out who was convicted of first degree murder for killing his wife with a shot gun. As long as I have been practicing law——" Thereupon, the following is shown by the record:

"Mr. Zabriskie: Your honor please, that is not in the evidence, and I object, and I ask an exception be noted.

"Exception allowed and sealed.

"The court: Let us confine ourselves to the evidence, Mr. Prosecutor."

The prosecutor continued without further objection or motion to have the remarks stricken and the jury instructed

to disregard them. After the jury had been taken from the courtroom, defendant's counsel said, "Just for the sake of the record, I want to ask an exception be noted to the prosecutor's reference to the Court of Pardons and the power of the Court of Pardons, and the possibility this man might be out within fifteen years, or whatever the language was, and that in other cases that have been tried, there have been cases where they are walking the streets now." Exception was allowed. There was no motion to strike the remarks of the prosecutor.

In *State* v. *Terry*, 91 *N. J. L.* 539, 543, it was held:

"The rule in this state, undoubtedly, is, that where counsel, in summing up to the jury, goes outside of the testimony and makes appeals based upon facts which have not been proved, but rest upon his unsupported assertions, the party injuriously affected must, in order to be relieved, move the trial judge to order the remarks stricken out and to charge the jury that they should be disregarded; an objection only to the illegal remarks does not require the trial judge to strike them out of his own motion, and unless counsel requests their elimination no ground for review is laid."

To the same effect are *State* v. *Barker*, 68 *N. J. L.* 19; *State* v. *Lang*, 75 *Id.* 1; *affirmed, Ibid.* 502; *State* v. *Biango*, 79 *Id.* 523, in which it was held that improper remarks by the prosecutor are no basis for reversal either on strict writ of error or under the Criminal Procedure Act in the absence of timely objection and a request for action by the court. *State* v. *McCormack*, 93 *Id.* 287; *affirmed*, 94 *Id.* 262; *State* v. *Corson*, 108 *Id.* 12; *affirmed*, 109 *Id.* 144; *State* v. *Hauptmann*, 115 *Id.* 412, 416.

Nos. 22, 25 and 27 are addressed to the contention that the verdict of the jury was contrary to the weight of the evidence and was the result of mistake, passion, prejudice or partiality; and that the jury disregarded the evidence of insanity, otherwise, the jury would have, at most, found a verdict with punishment of life imprisonment. We conclude there is no merit in this argument. If defendant was, at the time of the admitted commission of the act that produced the death complained of, legally insane, that is, unable to comprehend

the moral quality of the act, then he should have been acquitted. The testimony conclusively established defendant's guilt, unless his defense of insanity prevailed. Upon this point there was testimony of lay witnesses and expert medical witnesses for both the state and defendant. A question of fact was raised on this point and the jury had ample evidence to warrant the verdict of guilty.

Under assignment No. 23 it is argued that the trial judge erred in charging the jury that if it was found as a fact that the defendant had been previously convicted of crime, the jury had a right to take it into consideration in connection with all the other evidence in the case, and that, "It is for you, members of the jury, to determine to what degree, if any, Deegan's credibility or the credibility of any other witness who has been previously convicted of crime has been affected. And, in this connection, you as jurors should also consider the demeanor of the witnesses upon the stand and the manner in which they testified in determining their credibility."

Defendant took an exception to "all of what your honor said on the subject as to the conviction of crime affecting credibility, because this witness did not take the stand; so, therefore, it is not applicable; and, furthermore, I do not think there is any evidence of conviction of crime on the part of this defendant."

There was testimony that the defendant had been confined at Annandale, a penal institution. Dr. Means testified that he examined him there in 1940, and it also appeared in his army record that he had spent one year in a reformatory.

Upon the defendant's request for an exception to the reference to the defendant, the prosecutor requested that the application of the quoted portion of the charge to the defendant should be withdrawn, inasmuch as he had not testified. Whereupon, the court said, "The charge will be corrected then in accordance with that suggestion." This full discussion took place in the presence and hearing of the jury, so that the members of the jury could not be in doubt of the withdrawal of the charge, so far as the defendant was concerned. It is not necessary to deal with the propriety of the portion of the charge referred to because it was clearly with-

drawn and there was no objection by counsel for defendant to this action. There was no suggestion that the objection was not fully met by the action of the court.

However, since the court limited the application of the stated rule to the credibility of witnesses, no injury could result from such statement, because defendant did not become a witness. For both reasons, there was no injury to the defendant.

No. 24 has to do with a motion in arrest of judgment on the ground that the jurors were drawn from a panel where there had been a challenge to the array which had been overruled without legal cause. This question has been heretofore dealt with and we find no error in overruling the motion.

Upon consideration of the entire record, we conclude that there was no reversible error in the conduct of the trial, and that the weight of the evidence was with the state.

On the whole case, we conclude that the conviction under review should be affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, HEHER, WELLS, RAFFERTY, DILL, FREUND, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, PERSKIE, COLIE, JJ. 3.