IN RE PRESENTMENT OF PASSAIC COUNTY GRAND JURY.

Superior Court of New Jersey
Law Division
Criminal Part Passaic County

Decided October 20, 1986.

*Bernard F. Conway* for petitioners Lawrence Kramer, George Tuttle and Larry D. Worth (*Giblin, Combs, Cooney & Conway,* attorneys).

*Randolph M. Subryan* and *Jane E. Hendry* for the Prosecutor (*John P. Goceljak,* Acting Passaic County Prosecutor, attorney).

MANDAK, A.J.S.C.

This opinion is responsive to petitioners' motion seeking to quash the presentment delivered on January 31, 1986 by the Special Passaic County Grand Jury, January 1985 Stated Session, Panel D, July 1984 Term. The presentment charges three officials of the City of Paterson with mismanaging Comprehensive Employment and Training Act (hereinafter "CETA") funds. Petitioners, former Paterson municipal officials, challenge the polls of the grand jury on the grounds that the participation of five Paterson residents on the grand jury constitutes a *per se* inference of bias. It is urged that their influence as interested citizens and taxpayers of the City of Paterson tainted the entire grand jury process.

Between 1974 and 1983, the United States Department of Labor allocated funds for the City of Paterson to train and employ persons in low income areas. At the CETA program's conclusion in 1983, the then Director of Finance for Paterson disclosed that the City of Paterson overspent its allocation of CETA funds creating a municipal deficit in the amount of $1,492,959.44. Thereafter, Paterson residents were assessed an additional tax to pay for the CETA deficit. The Passaic County Prosecutor's Office conducted an investigation and requested that a special grand jury be impanelled to further investigate the circumstances of the overexpenditures.

The grand jury's investigation determined that, in general, "the CETA program was mismanaged by the City of Paterson during the years from 1976 to 1982." This mismanagement was found to have taken various forms, including: the failure by the director of the CETA program to familiarize himself with the basic rules and regulations relating to the program; the failure of the municipal administration to insure that the employees administering the program were fully trained and conversant with those rules and regulations; the failure of the municipal administration to insure that funds were not overexpended; the failure of the municipal administration to take immediate and necessary steps to rectify previous overexpenditures; the failure of the municipal administration to provide for audits of the CETA program; and finally, the resulting deficit which more recently placed an extra tax burden on Paterson residents. Particular criticism was directed toward Lawrence Kramer, then Mayor of the City of Paterson, Larry D. Worth, then Business Administrator of the City of Paterson, and Frank J. Del Monico, then Director of the CETA program. The grand jury exercised its power to issue a presentment outlining its findings and recommendations while recognizing the CETA overexpenditures as "a matter of serious public concern."

In Passaic County, grand jurors are selected by jury commissioners from voter registration and motor vehicle registration lists. Questionnaires are sent by the jury commission to the prospective grand jurors in order to ascertain basic rudimentary and objective qualifications for jury duty. After processing the questionnaires, the jury commission compiles a list of legally competent grand jurors. The first 23 persons on the list who are not excused are selected to be sworn and impanelled as a grand jury. Neither the court nor the prosecutor's office has control over the composition of the grand jury. This procedure was followed during the impanelling of the special grand jury investigating the mismanagement of CETA funds.

■    As a result of the sensitive nature of the within investigation, this court took supplemental precautions to protect against a partial or biased determination by the grand jury. First, the court charged the jurors as to their duties and responsibilities. Thereafter, a grand jury oath was administered by the county clerk to the jurors.[1] Each member then was given a copy of the charge and instructed to review the same before the first session.[2]

Prior to calling the first witness, the assistant prosecutor instructed the grand jury as to certain procedures which were to be followed and read R. 3:6–9 verbatim to the jurors. A list of names of the proposed witnesses was also read to the members and the jurors were instructed to indicate whether any of the witnesses were known to them. One juror stated that he knew of Mayor Kramer, but not on a personal basis. Further questioning of this particular juror revealed no indication of actual bias whatsoever.

After hearing 15 witnesses, including petitioners, during numerous sessions, the grand jury decided on March 5, 1985 to return a presentment, by a vote of 14 in favor out of a total of 18 grand jurors qualified to vote. Five members of the grand jury abstained from voting because they had not attended all of the sessions. It has been disclosed for the purpose of this motion that at least one Paterson resident voted in favor of the presentment. A committee of jurors were then selected to

---

[1] The grand jury oath provided in pertinent part the following: "That you shall present no one through envy, hatred or malice: Neither shall you leave any one unpresented for fear, favor or affection, for reward, gain or the hope thereof: But that you shall present all things truly as they shall come to your knowledge, according to the best of your skill and understanding, so help you God."

[2] The written charge provided to the grand jurors was not a reproduction of the charge given orally by the court and consequently did not contain the same language. Although the written charge contained nothing that was substantively incorrect, the use of two different charges is improper and should be immediately discontinued.

draft the presentment and on November 6, 1986 the grand jury reconvened to vote on the final draft of the presentment. Nineteen grand jurors attended this session (three grand jurors who previously abstained and one grand juror who previously voted "yes" did not attend), and the vote taken was 17 in favor of the presentment, none opposed and two abstentions. Four grand jurors who previously voted "no" on March 5, 1985 changed their positions and voted "yes" on November 6, 1986. Thus 13 of the original 14 "yes" votes remained the same and added thereto were the four "yes" votes made by grand jurors who previously voted against the presentment.

Petitioners contend that the five Paterson residents should have been automatically disqualified from investigating the actions of Paterson officials in administering the CETA program. The argument for *per se* disqualification of Paterson residents from the grand jury is based on petitioners' assertion that the residents would be partial because they "are the most affected by the matter under investigation." Petitioners initially raised this contention after the grand jury returned a presentment.

The historic purpose of grand and petit juries was "to guard against the exercise of arbitrary power to make available the common sense judgment of the community as a hedge against over zealous or mistaken prosecutors and in preference to the professional or perhaps overconditioned or biased response of a judge." *Taylor v. Louisiana*, 419 *U.S.* 522, 530, 95 *S.Ct.* 692, 42 *L.Ed.*2d 690 (1975). This precept requires a court to review a motion for the overturning of a jury decision with the utmost scrutiny and caution. *State v. Long*, 204 *N.J.Super.* 469 (App. Div.1985).

Our Federal and New Jersey State Constitutions concur as to the necessity of providing such an important role for the grand jury in our legal system. Article I, paragraph 8 of the 1947 New Jersey State Constitution provides that "no person shall be held for a criminal offense, unless on the presentment or

indictment of a grand jury...." An inflexible exigency of the grand jury selection process is that it "be so designed as to obtain competent jurors from a cross-section of the community." *State v. Rochester,* 54 *N.J.* 85, 89 (1969); *see also State v. Porro,* 158 *N.J.Super.* 269 (App.Div.1978). These decisions explain why jurors are randomly selected from voter registration lists, and more recently from motor vehicle owner registration lists. Any systematic exclusion or deliberate interference, irrespective of purpose, with a random jury selection from a list of qualified citizens potentially corrupts the cross-section ideal.[3]

An investigative grand jury is authorized to investigate and to submit a grand jury report on conditions affecting the "morals, health, sanitation or general welfare of the county, as well as county institutions." *In re Presentment of Bergen Cty. Grand Jury,* 193 *N.J.Super.* 2, 7 (App.Div.1984). Rule 3:6–9(a) states that presentments may censure public officials for non-criminal failure to discharge their public duties. *Id.* at 8; *In re Presentment by Camden Cty. Grand Jury,* 34 *N.J.* 378 (1961). By the very nature of an investigative grand jury with its application of community values and standards, the community cross-section standard becomes quintessentially valuable in determining whether public officials have breached their public duties. Therefore, the grand jury must be a body adequately acquainted with "local conditions, customs and mores." *State v. Anderson,* 132 *N.J.Super* 231, 233 (App.Div. 1975).

Another characteristic of grand jury presentments is the confidential manner in which the investigation proceeds. *See*

---

[3]In Passaic County a substantial percentage of minorities reside in Paterson. Therefore this court is aware that the disqualification of Paterson residents most likely would have caused the substantial underrepresentation of Sixth Amendment constitutionally identifiable ethnic and racial groups from the grand jury. *See State v. Ramseur,* 197 *N.J.Super.* 565 (Law Div.1984), aff'd in part and rev'd in part on other grounds 106 *N.J.* 123, 212–28 (1987); *see also Castaneda v. Partida,* 430 *U.S.* 482, 97 *S.Ct.* 1272, 51 *L.Ed.*2d 498 (1977); *Duren v. Missouri,* 439 *U.S.* 357, 99 *S.Ct.* 664, 58 *L.Ed.*2d 579 (1979).

*generally* 2 *Beale & Bryson, Grand Jury L. & Prac.* (1986), § 7:01 *et seq.* Maintaining secrecy and confidentiality throughout a grand jury session is absolutely necessary to protect the interests of the persons under investigation. As a result of such confidentiality, the prosecutor is unaware of the residency and composition of the jurors. Only the assignment judge is aware of the jurors qualifications. Moreover, often neither the assignment judge nor the prosecutor know what the facts and testimony are going to disclose. It follows that grand jurors are given a wide latitude of discretion in their investigatory powers because our society has entrusted these matters within the realm of the jurors' common sense and sense of fairness. It would often be premature, as it would have been in the instant matter, to *per se* disqualify groups of jurors with the limited knowledge available at the beginning of the proceedings.

Substantial safeguards were established to protect petitioners' rights. Under *R.* 3:6–9, if a public official is censured by a grand jury, the assignment judge must examine all of the evidence to determine whether the proof is conclusive that the existence of the condemned matter is inextricably related to the non-criminal failure of the censured officials to discharge their public duties. *In re Presentment of Bergen Cty. Grand Jury, supra,* 193 *N.J.Super.* at 9. Furthermore, the assignment judge must determine whether any part of the presentment should be stricken as being (1) false, (2) based on partisan motives, (3) indulging in personalities without basis, or (4) for other good cause. *R.* 3:6–9(c); *In re Union Cty. Grand Jury,* 44 *N.J.Super.* 443, 449 (Law Div.1957). Careful and diligent examination of the presentment by the assignment judge should absolve it of such deficiencies. *Id.* at 450.

An assignment judge must review all of the evidence to insure that there is no abuse or bias on the part of the jurors. It is normally not feasible for the assignment judge to disqualify a grand jury or grand jurors before the evidence is completely presented to the jurors. As a result, the grand jury selection

process, out of necessity, differs from the petit jury selection process. After reviewing all of the evidence presented to the grand jurors, *R.* 3:6–9(c) mandates that the assignment judge make a final determination that conclusive support justifies censure. A grand jury presentment can be stricken by the assignment judge in whole or in part, after the jurors approve the presentment. The findings of the court in making such a determination must include a decision as to whether the jurors acted with impartial judgment.

The New Jersey Legislature has addressed the issue of whether residents or taxpayers should be automatically excluded from actions involving the interests of their municipality. The Legislature has stated that status as a taxpayer or resident of a municipality, in and of itself, is not cause to disqualify jurors. The pertinent statute reads:

> It shall not be a ground of objection or challenge to the array or to the polls, in any action wherein a county or a municipality is or may be parties to the record, or otherwise interested, that the sheriff, constables or jurors are inhabitants of the county or municipality interested in such action, or liable to be taxed therein. [*N.J.S.A.* 2A:78–5]

*N.J.S.A.* 2A:78–5, "Challenge to array or polls; interest in action by or against county or municipality," was originally passed on February 28, 1849. Its purpose is to prevent the disqualification of jurors, judges and court officials from "sitting in a cause by reason of their being an inhabitant, freeholder and taxpayer" in the county or municipality that has an interest in the cause of action. *State v. Crane,* 36 *N.J.L.* 394, 397 (Sup.Ct.1873).

Enactment of *N.J.S.A.* 2A:78–5 was prompted by the court's decision in *Peck and Al v. The Freeholders of Essex,* 21 *N.J.L.* 656 (E. & A. Ct.1847). In *Peck,* the judge and each juror were disqualified from sitting in a suit brought by the freeholders of the county to retrieve a collector's bond. The court, in this civil action, reasoned that the judge and jurors each would benefit from a decision in favor of the freeholders which eventually

would cause collection of the bond. The *Peck* case was effectively nullified two years thereafter by enactment of *N.J.S.A.* 2A:78-5.[4]

Although petitioners argue that the language of this statute is ambiguous and that its provisions are limited to criminal indictments, this court fails to see any such ambiguity or limitation. The statutory language does not limit the application of the rule to criminal proceedings. Instead, the plain and clear language refers to "any action wherein a county or a municipality is or may be parties to the record, or otherwise interested." "Any action" simply must include civil actions, criminal indictments, convictions and presentments. New Jersey cases already have applied the statute to criminal and civil actions. *See Whippany Paperboard Co. v. Local No. 301, etc., C.I.O.,* 11 *N.J.* 153 (1953) (criminal contempt); *State v. Deegan,* 133 *N.J.L.* 263 (E. & A.Ct.1945) (murder conviction); *Cook v. Allendale,* 79 *N.J.L.* 285 (Sup.Ct.1910) (appointment of commissioners in condemnation hearing). Moreover, the statute has also been applied to challenges of both petit and grand juries. *See State v. Bolitho,* 103 *N.J.L.* 246 (Sup.Ct.1927), aff'd 104 *N.J.L.* 446 (E. & A.Ct.1927) (sheriff disqualified from participating in drawing grand jury); *Challenge to Grand Jury,* 3 *N.J.L.* 153 (Sup.Ct.1880) (grounds for challenging grand jury); *State*

---

[4]Most states have enacted legislation similar to *N.J.S.A.* 2A:78-5 which prohibits *per se* disqualifications of residents and taxpayers from juries. These statutes have been held to be constitutional. *See Ozark Border Electric v. Stacy,* 348 *S.W.*2d 586 (Mo.Ct.App.1961); *Minneapolis v. Wilkin,* 14 *N.W.* 581 (Minn. Sup.Ct.1883); *Smith v. German Insurance Co.,* 107 *Mich.* 270, 65 *N.W.* 236 (Sup.Ct.1895); *Hildreth v. City of Troy,* 101 *N.Y.* 234, 4 *N.E.* 559 (App.Ct.1886); *State v. R.M. Hudson Paving & Construction Co.,* 95 *W.Va.* 610, 122 *S.E.* 173 (Sup.Ct.1924). An example of such a statute is the provision in the West Virginia Code which in pertinent part reads: "In any suit or proceeding in which a county, district, school district, or municipal corporation, is interested or is a party, no person shall be incompetent as a juror because he is an inhabitant or taxpayer of such county, district, school district or municipal corporation." W.Va.Code § 17.

*v. Merra,* 103 *N.J.L.* 361 (E. & A.Ct.1927) (challenge to a petit jury).

Although there are no New Jersey cases that address the applicability of *N.J.S.A.* 2A:78–5 with respect to grand jury presentments, the New Jersey Legislature had full knowledge of the use of presentments when it originally enacted the statute in 1849. *See N.J. Const.* (1844), Art. I, Par. 9. *See also In re Camden County Grand Jury,* 10 *N.J.* 23, 40–65 (1952) (stating that the word presentment "could only have meant that the Convention (1947 Constitution) approved presentments of public affairs as they had been known in New Jersey from earliest colonial times." *Id.* at 65). Common sense dictates that the Legislature intended the statute to apply to grand jury presentment investigations, as well as to other civil and criminal proceedings.[5]

Practical consideration of the issue concerning applicability of *N.J.S.A.* 2A:78–15 also supports the court's position when taken to its logical conclusion. Petitioners assert that *N.J.S.A.* 2A:78–5 only applies to criminal indictments. Therefore, whenever a municipality has a pecuniary interest in a civil proceeding, then petitioners' assertion would mandate that all municipal residents would be *per se* disqualified. This would be the result in every civil action for monetary damages, certain criminal proceedings that might include fines and forfeitures, and grand jury investigations into governmental conduct where taxes, budgets or other financial considerations are involved. Correspondingly, all county residents would be *per se* disqualified in similar actions in which the county had a pecuniary interest, and whenever the state had a pecuniary interest in an action, state residents would be *per se* disqualified; although

---

[5]The ruling concerning *N.J.S.A.* 2A:78–5 in this opinion is limited to the facts presented in this case. It is not the court's intention to preclude interested parties from challenging improper conduct by a grand jury or petit jury upon a showing of partisan motives or other good cause.

petitioners have conceded the potential for conflict diminishes in proportion to the reduction of economic impact. This simplistic approach to *per se* disqualification of jurors would only cripple our jury system and lead to absurd and inconsistent results.

This court is persuaded by the fundamental tenet in our court system of the innate sense of fairness generally exhibited by citizens in the community. Moreover, this sense of justice is not inhibited by the type of remote pecuniary interest that is at issue in this case. Petitioners fail to recognize that Paterson residents will gain nothing tangible from the presentment. The special grand jury criticized the past actions of petitioners and there can be no actual financial or otherwise pecuniary gains derived by the jurors from the presentment. The CETA funds already have been spent, the benefits have been derived and the taxes already have been increased and assessed to make up for the deficit. Therefore, the pecuniary interest of Paterson residents, if it can be said to exist at all, is exceedingly remote.

Procedural safeguards ensuring impartial grand jury decisions rely upon the post-presentment review by the assignment judge, rather than the wholesale disqualification of jurors. The court's review of the evidence substantiates that the grand jury acted with impartial judgment. First, the grand jurors swore to an oath that required impartial investigation. Second, the grand jurors were informed of the witnesses to be called and disclaimed any personal or other influential connection with said witnesses. Third, there was simply no actual interest at stake aside from the grand jury's interest in performing its civil function. There was no refund or financial gain to be derived from the presentment. Finally, this court's independent review of the evidence provided for a fully impartial determination of conclusive support for the presentment. After reviewing the evidence and the presentment in this case, there was no indication that the special grand jury as a whole, or selective members, exhibited impartial or biased judgment. Without a find-

ing of such improper grand jury conduct, either collectively or individually, the presentment should not be stricken.

A majority of other jurisdictions, including state and federal courts, have rejected *per se* disqualification of residents and taxpayers. The only states that consider automatic disqualification of residents, taxpayers or utility customers are New York and Iowa.[6] However, the cases from New York and Iowa involve residents and taxpayers who had been disqualified from petit jury duty. Furthermore, the jurors would have been subject to gain refunds[7] or pay higher taxes,[8] depending upon the returned verdict. The pecuniary interest of the residents and taxpayers were both actual and substantial. This court cannot find any reported cases disqualifying a grand juror because of the juror's interest as taxpayer or resident of a party municipality.

Furthermore, the trend among state courts is to abandon *per se* disqualification of residents or taxpayers without a further finding of actual bias by the jurors. *Ridglea, Inc. v. Unified School District No. 305*, 206 *Kan.* 11, 476 *P.*2d 601 (Sup.Ct.

---

[6]Iowa remains the only state to follow a common law *per se* disqualification for municipal residents when the outcome of a trial involves a substantial pecuniary interest for the residents. New York's statute does not provide for *per se* disqualification of residents, but does provide for per se disqualification of jurors having certain pecuniary interests. N.Y.Civil Prac.Law Sec. 4110(a) (McKinney 1963). New York law does not require a showing of actual bias which is the standard in other states.

[7]See *Long Island Lighting Co. v. New England Petroleum Corp.*, 362 *N.Y.S.*2d 350, 80 *Misc.*2d 183 (Sup.Ct.1974) (Although a municipality was not a party to this action, Nassau County residents were disqualified because their electric rates would have decreased if plaintiff prevailed. Therefore, the court granted the motion to change venue based upon the belief that nearly all Nassau County residents were utility customers and would be biased in favor of the utility company. This decision disqualified Nassau County jurors because of their status as customers, not as residents).

[8]See *Lang v. City of Des Moines*, 294 *N.W.*2d 557 (Iowa Sup.Ct.1980) (All Des Moines property taxpayers were precluded from sitting on the jury for the wrongful-death negligence action against the City of Des Moines).

1970).[9] In fact, the automatic disqualification rule has not been adopted by any state in the last 30 years. *Acord State ex rel. Douglass County v. Sanders,* 294 *Or.* 195, 655 *P.*2d 175 (Sup. Ct.1982).

The federal courts have also rejected the *per se* disqualification rule of residents and taxpayers on petit and grand jurors without a showing of actual bias. *U.S. v. Brown,* 540 *F.*2d 364 (8 Cir.1976); *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 *F.Supp.* 1240 (N.D.Ohio 1980); *Royal Indemnity Company v. City of Erie,* 372 *F.Supp.* 1137 (W.D.Pa. 1974). The burden of proof remains with the challenger to show by a preponderance of the evidence that partiality and bias exist. *U.S. v. Provenzano,* 620 *F.*2d 985 (3 Cir.1980). In the case at bar, petitioners have failed to raise the contention of bias from the realm of speculation to the realm of fact. There is nothing in the record which substantiates petitioners' assertions of actual or inferred bias.

It is patently clear that a *per se* disqualification of residents and taxpayers would only contribute to disintegration of our jury system. There is no evidence of actual bias or partiality involving any member of the special grand jury and this court's independent review of the evidence has provided a final safeguard against improper jury conduct. This court has taken every reasonable precaution to protect the rights of petitioners. It would be an injustice to the citizens of Passaic County and the State of New Jersey to undo the findings of this special grand jury based upon the alleged and unsubstantiated bias of jurors. Petitioners' motion for an order to quash the grand jury presentment is therefore denied.

---

[9]Other cases recently rejecting the *per se* disqualification rule are: *Pennsylvania Power and Light Co. v. Gulf Oil Co.,* 270 *Pa.Super.* 514, 411 *A.*2d 1203 (Super.Ct.1979); *Bell v. City of Bay St. Louis,* 467 *So.*2d 657 (Miss.Sup.Ct.1985).