963 A.2d 388 (2008)
405 N.J. Super. 88
In re the MONDAY GRAND JURY PANEL OF MONMOUTH COUNTY VICINAGE 9.
DOCKET NO. A-2980-06T4
Superior Court of New Jersey, Law Division, Monmouth County.
Decided October 27, 2008.
Approved for Publication January 14, 2009.
*389 Richard Incremona, Assistant Prosecutor for Monmouth County (Luis A. Valentin, Monmouth County Prosecutor).
LAWSON, A.J.S.C.
This is an action wherein this court conducted a voir dire of the subject grand jury following the publication of several newspaper articles stating that a letter from a grand juror raising prosecutorial misconduct issues caused the dismissal of a criminal indictment. The main issue before this court is whether the newspaper articles discussing the letter tainted the grand jury from hearing any future cases presented to them as a panel. The court has engaged in colloquy in chambers and in court with Monmouth County Prosecutor Luis Valentin, First Assistant Prosecutor Peter Warshaw, who handled the dismissal in State of New Jersey v. Lorie Hentges, Indictment No. 08-09-2070, Narcotics and Criminal Enterprises Unit Director James Jones, who presented State v. Esteves, Case No. XX-XXXXXXX, to the instant grand jury panel, and Executive Assistant Prosecutor Richard Incremona, who participated in the voir dire of the instant grand jury panel. The court also voir dired the entire grand jury panel except for the grand jury foreperson who was absent on vacation, and now accordingly enters the following findings of fact and conclusions of law pursuant to Rule 1:7-4.

I. STATEMENT OF FACTS
On October 17, 2008, the Honorable Francis P. DeStefano, P.J.Cr., dismissed without prejudice State of New Jersey v. Lorie Hentges, supra, Indictment No. 08-09-2070, based on prosecutorial misconduct during grand jury proceedings for violating the principles established in State v. Murphy, 110 N.J. 20, 538 A.2d 1235 (1988). Judge DeStefano issued a written opinion outlining the history of the case, the Murphy issues presented to the court by a grand juror's letter, and his conclusion that the actions taken by the prosecution in the Hentges matter required a dismissal of the case.[1]
Newspaper articles discussing the dismissal appeared on Saturday October 18, 2008, in both the Asbury Park Press and the Star-Ledger. The news articles discussed the dismissal of the case, and also a letter submitted to this court by one of the grand jurors detailing actions taken, and also not taken, by the Monmouth County Prosecutor's Office which led to a flawed indictment. The news articles were immediately brought to this court's attention on *390 the morning of Monday October 20, 2008, and a decision was made to voir dire the grand jury panel that afternoon to determine whether they could continue to serve on future cases despite the two articles disclosing information from the grand jury's prior proceedings.
The voir dire, conducted by this court, was attended by Executive Assistant Prosecutor Incremona. The court and Incremona asked questions that focused on whether the grand jurors had read either one or both of the articles; if they discussed the article with anyone; whether they would feel the need to edit their discussions during the deliberation process in future cases out of concern that another grand juror may decide to write a letter or otherwise make the deliberations public; whether they thought the articles tainted them to hear future grand jury matters presented by the prosecutor's office; and whether they could continue to uphold the grand jury oath taken when the grand jury was impaneled.
Each grand juror was questioned by the court individually in a secure courtroom on the record. The testimony presented by the grand jurors provided a mixed picture. Several grand jurors stated they had not seen or read either article since they were published, while others mentioned that the articles were passed around the grand jury room that morning. Similarly, while several grand jurors stated they did not discuss the articles with anyone, several others stated people were discussing the subject matter in the grand jury room.
Several members of the grand jury panel had notable reactions to the release of the letter. One grand juror mentioned he had discussed the article with his wife because he was angry that another juror had released information from the proceedings which led to the Hentges case being dismissed. A juror mentioned she had also discussed the case outside the grand jury room with a friend following the grand jury's vote to indict Hentges. Another juror appeared visibly shaken during the voir dire, and stated adamantly that she could not speak freely during deliberations, and was very uncomfortable with now being a part of the grand jury panel. A different juror's inability to uphold the grand jury oath was displayed by the flip-flop nature of her answers. Her answers vacillated between being able to freely discuss issues during deliberation and being fearful that someone would disclose her actions; with being able to work with the other grand jurors and feeling apprehensive about working with the other grand jurors. These responses provide a snapshot of the grand jury panel's feelings about future grand jury service on this panel.
When the questioning concluded, Incremona made a motion to dismiss the entire grand jury for cause as tainted based on the grand jury panel's answers to the specific questions, as well as additional information volunteered by the grand jurors. Incremona also requested that the grand juror who authored the letter be dismissed for misconduct. In dealing with the grand jury panel specifically, Incremona pointed to the fact that approximately one-third of the grand jurors indicated the letter would make them hesitant to speak openly in future grand jury deliberations for fear of having their opinions made public. Additionally, each grand juror thought they "knew" who authored the letter, that knowledge of the letter's author was "known" but not discussed, and one juror had even asked another grand juror if he/she was the author of the letter. Incremona argued that the totality of the circumstances mandated that the grand jury be dismissed because they violated the oath to keep the grand jury proceedings *391 secret, and while past actions were not tainted because of the newspaper articles, any future actions taken by this specific panel would be highly disputed. This court reserved decision on Incremona's motion, and now issues this written opinion.

II. APPLICABLE LAW

A. The Role of the Grand Jury
The New Jersey Constitution, as enacted in 1947, guarantees a person accused of a crime the right to be indicted by a grand jury before being placed on trial. N.J. Const, art. I, ¶ 8. That paragraph states:
No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases now prosecuted without indictment, or arising in the army or navy or, in the militia, when in actual service in time of war or public danger.
This right has existed in New Jersey since 1844, and the function of the grand jury has been evolving ever since. In large part, the guarantee of protection afforded by a New Jersey grand jury has mirrored its federal counterpart. State v. Ramseur, 106 N.J. 123, 215 n. 42, 524 A.2d 188 (1987).
The important role of the grand jury in the United States has been identified by the United States Supreme Court:
"[R]ooted in long centuries of Anglo-American history," the grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It "`is a constitutional fixture in its own right.'" In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

[United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352, 365 (1992) (citations omitted) ].
The New Jersey Supreme Court recently recognized the grand jury as being an investigative body with expansive powers. State v. Francis, 191 N.J. 571, 587, 926 A.2d 305 (2007) (citing Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643 (1972) and United States v. Dionisio, 410 U.S. 1, 13, 93 S.Ct. 764, 771, 35 L.Ed.2d 67, 79 (1973)). Further, the grand jury acts "as a shield between an individual and his sovereign." Francis, supra, 191 N.J. at 585, 926 A.2d 305. Moreover, the grand jury seeks "to lend legitimacy to our system of justice by infusing it with a democratic ethos." State v. Fortin, 178 N.J. 540, 638, 843 A.2d 974 (2004). Acting as both shield and sword, the grand jury indicts when a prima facie case is established, while standing guard to protect the innocent from "hasty, malicious and oppressive persecution." State v. Del Fino, 100 N.J. 154, 164, 495 A.2d 60 (1985) (quoting Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962)).
New Jersey courts have also recognized the grand jury acts simultaneously in partnership with, and in opposition to, the prosecutor in each case. Francis, supra, 191 N.J. at 586, 926 A.2d 305 (recognizing prosecutors primarily control grand jury proceedings, but the grand jury's power to bill or no bill provides an incentive *392 for the prosecutor to avoid frivolous cases.) The prosecutor may "assist[ ] in the investigation and examination of witnesses; in advising the grand jury as to the admissibility of evidence and the proper mode of procedure and in explaining the testimony with reference to the law of the case." Id. at 587, 926 A.2d 305 (quoting State v. Hart, 139 N.J.Super. 565, 567, 354 A.2d 679 (App.Div.1976)).
Consistency in the grand jury process is provided by the procedural guidelines for impaneling a grand jury enacted and codified by the legislature. See N.J.S.A. 2B:21-1 to -10. A properly impaneled grand jury consists of not more than twenty-three randomly selected persons who are voir dired by the assignment judge, N.J.S.A. 2B:21-2b, twelve of whom must vote in the affirmative to indict after considering all of the testimony and evidence presented by the prosecution. N.J.S.A. 2B:21-7. If the prosecutor believes that a juror cannot decide the matter impartially, or the juror fails to meet the requirements outlined in N.J.S.A. 2B:20-1, the prosecutor may seek to have a grand juror dismissed from duty upon a good cause showing to the assignment judge. N.J.S.A 2B:21-2. Neither the prosecutor nor any other person may make the decision to remove a grand juror from performing his or her duty except for the assignment judge. N.J.S.A. 2B:21-2b and d; see also Murphy, supra, 110 N.J. 20, 538 A.2d 1235.
Once impaneled, the grand jury selects randomly from among its members a juror to serve as foreperson. N.J.S.A. 2B:21-5. The foreperson has the duty to swear in witnesses, and before being discharged, certify the name of the witnesses who have been sworn. N.J.S.A. 2B:21-6. After each grand juror has taken the grand juror oath, and a foreperson has been selected, the grand jury may now undertake its role as both "sword" and "shield."

B. Oath and Secrecy
Once impaneled, the grand jury takes an oath to uphold the Constitution, and to keep secret any discussions occurring during the grand jury proceedings. N.J.S.A. 2B:21-3. This oath asks grand jurors whether they
swear or affirm that you will support the Constitution of the United States and the Constitution of this State; that you will diligently inquire into all matters brought before you to the best of your skill, knowledge and understanding; that you will take no action through envy, hatred or malice nor for fear, favor or affection, or for reward or the hope of reward; that you will make a true presentment of all matters coming before you, and that you will keep secret the proceedings of the grand jury? [Ibid.]

Grand jury proceedings have generally been recognized as requiring secrecy to function properly. See Butterworth v. Smith, 494 U.S. 624, 630, 110 S.Ct. 1376, 1380, 108 L.Ed.2d 572, 580 (1990); Daily Journal v. Police Dep't. of City of Vineland, 351 N.J.Super. 110, 124, 797 A.2d 186 (App.Div.2002). However, secrecy can be divided into two subcategories: secrecy pertaining to grand jury proceedings, and secrecy in grand jury deliberations. Cases involving secrecy and grand jury proceedings typically involve a claim of abuse of the grand jury process. See generally Francis, supra, 191 N.J. 571, 926 A.2d 305; In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 870 A.2d 249 (2005); State v. Hogan, 144 N.J. 216, 676 A.2d 533 (1996). Issues of secrecy in grand jury deliberations occur less frequently, and the issue before those courts often involves an unauthorized person being *393 in the grand jury room during deliberations. See State v. Manney, 24 N.J. 571, 133 A.2d 313 (1957) (finding stenographer in grand jury room during deliberations did not procedurally taint grand jury process); State v. Grant, 361 N.J.Super. 349, 825 A.2d 577 (App.Div.2003) (remanding to trial court to determine if sheriffs officer accorded same status as stenographer).
New Jersey and federal courts have followed the reasoning adopted by the United States Supreme Court in United States v. Procter & Gamble Co., 356, 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), when balancing the need to release grand jury information and protecting the grand juries' right to secrecy. The Court's reasoning finds grand jury secrecy should be protected
(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
[Id. at 681, 78 S.Ct. at 986, 2 L. Ed.2d at 1081.]
See also Butterworth, supra, 494 U.S. at 630, 110 S.Ct. at 1380, 108 L.Ed.2d at 580 (recognizing that grand juries require secrecy to function properly); In re Grand Jury Testimony, 124 N.J. 443, 450, 591 A.2d 614 (1991) (recognizing the secrecy considerations adopted by both the United States Supreme Court and the New Jersey Supreme Court); State v. Doliner, 96 N.J. 236, 246, 475 A.2d 552 (1984) (balancing the need for disclosure versus the interest in maintaining grand jury secrecy); State v. Moffa, 36 N.J. 219, 176 A.2d 1, (1961) (Proctor, J., dissenting) (recognizing that grand jury proceedings are traditionally secret).
However, New Jersey has also recognized that secrecy in grand jury proceedings is limited. For example, under Rule 3:6-6b all records and transcripts of the grand jury proceedings will be made available to a defendant before trial upon request. Also, a person investigated by a grand jury where a no bill is returned may request a letter explaining as much, N.J.S.A. 2B:21-9a, or a person called as a witness may obtain a letter indicating he is not the subject of the investigation. N.J.S.A. 2B:21-9b. Additionally, "[although the grand jury occupies a special niche in this state's system of criminal law, it has never been accorded the `almost mythical' stature ceded to it by some courts." In re Grand Jury Testimony, supra, 124 N.J. at 450, 591 A.2d 614 (citing Murphy, supra, 110 N.J. at 30, 538 A.2d 1235).
Despite the liberal approach to disclosing certain elements of the grand jury proceedings, the New Jersey Legislature and Supreme Court have adopted rules which can be recognized as embracing the important role secrecy plays in the grand jury deliberation process. First, N.J.S.A. 2B:21-3 establishes a secrecy component as part of the grand jury oath. Similarly, Rule 3:6-7 requires an oath of secrecy to be taken by "all persons ... present while the grand jury is in session." Second, N.J.S.A. 2B:21-10a provides for the punishment of a grand juror who "purposely discloses any information concerning the proceedings of a grand jury, other than as *394 authorized or required by law." As recognized in Procter & Gamble, supra, 356 U.S. at 677, 78 S.Ct. at 983, 2 L.Ed.2d at 1077, and the cases cited therein adopting its reasoning, an important policy concern is "to insure the utmost freedom to the grand jury in its deliberations." As such, actions which interfere with a grand jury's confidence in the deliberation process restricts their freedom to carry out their obligation to "diligently inquire into all matters[,] ... make a true presentment of all matters ... and ... keep secret the proceedings of the grand jury." N.J.S.A. 2B:21-3.

C. Taint in this Grand Jury
Secrecy in the grand jury process evolved to protect the impartiality of the grand jury as a deliberative body. Butterworth, supra, 494 U.S. at 630, 110 S.Ct. at 1380, 108 L.Ed.2d at 580 (citing Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218-19 n. 9, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156, 164 (1979)). Typically, any attempt to determine the affect of external influences on a grand jury would be mere conjecture, Hart, supra, 139 N.J.Super. at 569, 354 A.2d 679, and the courts have rejected per se rules for grand jury dismissal based on categorized taint. See In re Presentment of Passaic County Grand Jury, 220 N.J.Super. 470, 532 A.2d 757 (App.Div. 1986) (holding residents of a municipality are not barred in cases involving the municipality solely based on status as a taxpayer or resident); but see Vasquez v. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598, 609 (1986) (holding racially selective grand jury process taints grand jury by systematically excluding voices from the deliberative process).
Taint in the grand jury can extend beyond prejudice or preconceived conceptions of a case. Taint also exists when, due to an external influence, the grand jury can no longer function in the manner necessary to uphold the grand juror oath. See Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (stating that a prosecutor does not need to disclose every piece of information helpful to the defense, but must timely release material exculpatory information); Hogan, supra, 144 N.J. at 219, 676 A.2d 533 (finding a jury could not perform its role when a prosecutor withheld clearly exculpatory information); State v. Womack, 145 N.J. 576, 679 A.2d 606 (holding that indictment could not stand when a prosecutor misled grand jurors by failing to submit reliable evidence). The ability to make an informed decision is central to the grand jury's role in the New Jersey criminal system. Hogan, supra, 144 N.J. at 229, 676 A.2d 533 (citing Murphy, supra, 110 N.J. at 35, 538 A.2d 1235; Del Fino, supra, 100 N.J. at 164-65, 495 A.2d 60; Hart, supra, 139 N.J.Super. at 568-69, 354 A.2d 679).
The grand jury's authority to remove all non-grand jurors from the grand jury room during deliberations stresses the fundamental importance of allowing the grand jury the freedom to deliberate without external influences. Removing the prosecutor, stenographer, and grand jury clerk from deliberations eliminates any semblance of public intrusion into the sanctity of the decision-making process. Additionally, this authority enhances the "democratic" ideals underlying the grand jury process by allowing a panel to "diligently inquire into all matters ... to the best of [their] skill, knowledge and understanding, [without] ... fear, favor or affection." The grand juror's letter detailing the actions taken during the grand jury indictment process led to a breakdown in the ability of the other grand jurors to openly inquire into all *395 matters, and could be equated to a systemic failure in the process.
The grand jurors' responses during voir dire indicate they have been tainted by the release of the newspaper articles, and can no longer uphold the oath of a grand juror. The outside world has pierced the grand jury room's veil of privacy, and the grand jurors' responses indicating their inability to freely discuss thoughts and opinions on any further actions before the panel casts doubt on any future decisions made by the panel. This directly impacts the ability of this grand jury panel to make an informed decision on the matters before them. Any indictment or no bill handed down following the release of the newspaper articles would be clouded with questions of whether or not a juror voiced an opinion which could have acted as riptide to change the panel's vote. Such doubts about the legitimacy of a vote would rock the foundation upon which the grand jury process is built.
Failure to disclose opinions during deliberations could have a ripple effect on how this grand jury would vote in any future matter. One grand juror may not vote his or her conscience due to a belief that he or she is the only one with a particular opinion, or for fear of public retribution if an opinion is disclosed. A juror failing to speak his mind due to fear or timidity is a potential situation facing every grand jury panel, but the newspaper articles have created an admitted influence on the members of this grand jury panel which would cause them to edit their words or actions out of fear of publicity, rather than personality.

III. CONCLUSION
Here, the letter opened the grand jury panel's eyes to a fear that their opinions and votes could be exposed to the world. The grand juror's letter surpassed the accepted norms of grand jury disclosure not only by going outside of the process established by law, but also by removing the veil of secrecy the grand jury relied on to deliberate freely. No other violations of the grand jury oath came to light during the grand jury voir dire, and the grand jurors only expressed concern over the letter and newspaper articles. Thus, this court will not inquire into any previous actions taken by the panel, but this grand jury panel must be dismissed from taking any further actions, with the exception that the grand jury foreperson must complete the ministerial duties of his role. Incremona's motion to dismiss this grand jury panel for cause, and the grand juror who authored the letter for misconduct, will be granted. Any matters currently being heard by this grand jury panel will be void ab initio, and may be reintroduced to the a future grand jury panel as permitted by law.
NOTES
[1] This court is not passing judgment or acting in any way on the matter of State v. Hentges due to a familial conflict of interest based on a relative of this court working at the firm Ms. Hentges employed as defense counsel. As such, this court immediately delivered the grand juror's letter to Judge DeStefano who made the ultimate decision to dismiss the indictment for prosecutorial misconduct. Any findings of fact or conclusions of law herein are limited to the narrow scope of procedural issues presented by the publication of newspaper articles discussing the letter submitted to this court by the grand juror, and the letter's potential effect on this grand jury panel.